UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| **Case No.** | CV 19-10899-MWF (RAOx) | **Date:  June 24, 2021** |
| **Title** | In Re: Ring LLC Privacy Litigation | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**  ORDER RE: MOTION TO COMPEL ARBITRATION [83]; STAY PENDING RESOLUTION OF RING'S MOTION TO COMPEL ARBITRATION [112]

Before the Court are two motions:

The first is Defendant Ring LLC's ("Ring") Motion to Compel Arbitration (the "Motion"), filed on February 5, 2021.  (Docket No. 83).  On March 8, 2021, Plaintiffs representing the putative class filed an opposition.  (Docket No. 89).  On March 29, 2021, Ring filed a reply.  (Docket No. 99).  On March 24, 2021, Ring filed a supplemental opening brief with respect to Plaintiff Catherine Foster, who joined the consolidated action on March 23, 2021.  (Docket Nos. 95, 96).  Plaintiff Foster filed a supplemental opposition on March 26, 2021.  (Docket No. 97).

The second is Ring's Motion to Stay Pending Resolution of Ring's Motion to Compel Arbitration (the "Motion to Stay"), filed on June 18, 2021.  (Docket No. 112).

The Court has read and considered the papers filed in connection with the Motions and held a telephonic hearing on April 12, 2021, pursuant to General Order 21-03 arising from the COVID-19 pandemic.  The Court now rules as follows:

- The Motion is **GRANTED *in part* and DENIED *in part***.  The Purchaser Plaintiffs who made a Ring account using the Ring App or Website were on inquiry notice of Ring's Terms of Service.  Therefore, the arbitration

---

**CIVIL MINUTES—GENERAL**                                                        1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-10899-MWF (RAOx)   Date: June 24, 2021
Title:    In Re: Ring LLC Privacy Litigation

---

clause with respect to these Plaintiffs is enforceable.  Because the Terms contained a delegation provision, the Court does not address Plaintiffs' arguments that the arbitration clause is unconscionable or otherwise unenforceable.  However, the Non-Purchaser Plaintiffs are not bound by the agreement.  They are not "Authorized Users" under the Terms of Service and their guardians' assent to the Terms' arbitration clause does not bind them.

- The Motion to Stay is **DENIED** *as moot*.

## I. BACKGROUND

On February 11, 2020, the Court granted the stipulation of various parties to consolidate numerous related cases into this putative class action.  (Docket No. 19).  Plaintiffs filed a consolidated First Amended Complaint ("FAC") on December 17, 2020.  (Docket No. 69).

Ring manufactures and sells home security and smart home devices.  (Declaration of John Modestine ("Modestine Decl.") ¶ 3 (Docket No. 83-2)).  Such devices include video doorbells, security cameras, and alarms (the "Devices").  (*Id.*).  Ring also sells a subscription service, known as the Ring Protect Plan, through which customers may purchase additional services and benefits related to their devices.  (*Id.*).

The FAC alleges that Ring's security systems were defectively designed without sufficient security protocols, leaving Plaintiffs who used the systems vulnerable to cyberattack, identity theft, and physical harm.  (FAC ¶¶ 3-8).  The FAC also alleges that Ring actively shared users' sensitive personal identifying information with third parties without first obtaining users' authorization or consent, which allowed third parties to track and surveil Plaintiffs.  (*Id.* ¶ 9).

Unless otherwise noted, the following details and descriptions represent the material features of the packaging, terms, Websites, applications, and clauses at all

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-10899-MWF (RAOx)           **Date:** **June 24, 2021**
**Title:** In Re: Ring LLC Privacy Litigation

times relevant to this action (*i.e.*, from July 2017 to December 2019, when Plaintiffs purchased and/or used the Devices).

For the purposes of the Motion, the parties distinguish between those Plaintiffs who purchased the Ring devices themselves (the "Purchaser Plaintiffs"), and those who were allegedly harmed by Ring devices but did not personally purchase them (the "Non-Purchaser Plaintiffs," twelve minor children and an elderly woman who lived in a nursing home). (*See* Motion at 1-2; Opposition at 1 n.1, 4).

The exterior packaging of the Ring video doorbell and camera products stated either that "[u]se of the product is subject to your registration with Ring and your agreement to the Terms of Service found at www.ring.com" or that "[u]se of the product is subject to your registration with Ring and your agreement to the Terms of Service found at www.ring.com/terms." (Modestine Decl. ¶¶ 4-5, Ex. A).

To set up and manage the Device, the user must download the Ring mobile application ("Ring App") and register for a Ring account, either through the Ring App or Ring's Website. (*Id.* ¶¶ 21-25).

From May 2017 until June 2018, a user was required to check a box during the account registration process to indicate agreement to the Terms before moving on to the next step of the registration process. (*See* Appendix (citing *id.*, Ex. L (May 2017-Nov. 2017: "I agree to Ring's Privacy Notice, Terms of Service, and Guidelines for Installation and Use."); *id.*, Ex. M (Nov. 2017-June 2018: "I agree to Ring's Privacy Notice and Terms of Services [sic]."))).

From June 2018 through January 2020, the user was required to create a password at the last step of the account registration process, and was notified that by completing account registration they agreed to the Terms. (*See* Appendix (citing *id.*, Exs. N, O (June 2018-May 2019: "By signing up, you agree to our Terms of Service"); *id.*, Ex. P (May 2019-Jan. 2020: "By continuing you agree to Ring's Terms of Service."))). The user was then required to click a button that appeared below the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-10899-MWF (RAOx)**             **Date:  June 24, 2021**
**Title:**     In Re: Ring LLC Privacy Litigation

text notifying the user that by continuing with account registration, the user indicated assent to the Terms.  (*Id.*).

The user also had the option of registering for a Ring account via Ring's Website.  (Modestine Decl. ¶ 24).

From February 2018 until April 2019, the user was required to check a box agreeing to the Terms to proceed in creating an account on the Website.  (*See* Appendix (citing *id.*, Ex. Q)).  From April 2019 through January 2020, the text "[b]y continuing you agree to Ring's Terms of Service" appeared directly above a large "Create Account" button.  (*See* Appendix (citing *id.*, Ex. R)).

Plaintiff does not contest that Exhibits L through R are fair and accurate depictions of the Ring App and Website on the dates stated above.  (*See generally* Opposition).

Since August 18, 2017, all iterations of the Terms included an arbitration clause and class waiver.  (Modestine Decl. ¶¶ 6-20, Exs. G at 15-19, B at 10-13, C at 11-14, D at 11-14, E at 10-13, F at 15-19, H at 11-14, I at 12-14, J at 15-19, K at 12-15).  The section entitled "Dispute Resolution" states that "[t]he Federal Arbitration Act (the 'FAA') . . . and federal arbitration law apply to this Agreement and govern all questions as to whether a dispute is subject to arbitration."  (*Id.*, Ex. G at 16).  The section further states that the parties "agree that any dispute, controversy, or claim arising out of, or relating to your use of the services and products, to this agreement, or to the content, any relationship between us and/or any recording on the services and/or products shall be resolved only by final and binding, bilateral arbitration."  (*Id.*, Exs. G at 16, B at 10-13, C at 11-14, D at 11-14, E at 10-13, F at 15-19, H at 11-14, I at 12-14, J at 15-19, K at 12-15).

The Terms also state that "'[d]isputes' shall include, but are not limited to, any claims or controversies between you and Ring against each other related in any way to or arising out of in any way from this Agreement, the Services, the Products, and/or the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-10899-MWF (RAOx)**          **Date:  June 24, 2021**

**Title:**     In Re: Ring LLC Privacy Litigation

Content[.]"  (*Id.*, Exs. G at 16, B at 11, C at 11, D at 11-12, E at 11, F at 16, H at 12, I at 12, J at 16, K at 13).

In addition, the Terms provide that "[t]he term 'you,' as used in these Terms, includes any person or entity who is the owner of the Product and creates an account associated with the Product ('Owner'), as well as any person or entity authorized to access or use the Owner's Products and Services ('Authorized Users')."  (*Id.*, Exs. G at 2, B at 1, C at 1, D at 1, E at 1, F at 2, H at 1, I at 1, J at 2, K at 1-2).

Since August 18, 2017, the Terms have also contained a delegation clause stating that the arbitrator "shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to any claim that all or any part of these Terms are void or voidable, or whether a claim is subject to arbitration."  (*Id.*, Ex. G at 18; *see also id.*, Exs. C at 13, D at 13, E at 12, F at 18, H at 13, I at 14, J at 18, K at 14).

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") "requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing 9 U.S.C. § 3).  The FAA also "limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue."  *Id.* (citation omitted).  "[E]xcept where the parties ***clearly*** and ***unmistakably*** provide otherwise, it is the court's duty" — as opposed to an arbitrator's duty — "to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter."  *SEIU Local 121RN v. Los Robles Reg'l Med. Ctr.*, 976 F.3d 849, 855 (9th Cir. 2020) (emphasis in original) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)).

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state law principles that govern the formation of contracts.'"  *Nguyen*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 19-10899-MWF (RAOx) | Date: June 24, 2021 |
| Title: | In Re: Ring LLC Privacy Litigation | |

763 F.3d at 1175 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Federal courts sitting in diversity look to the law of the forum state — here, California — when making choice of law determinations." *Id*. (citation omitted).

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate exists. *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

## III. **DISCUSSION**

Ring argues that, because each Plaintiff purchased a Ring product, created a Ring account, and/or used Ring's services, each Plaintiff also consented to Ring's Terms of Service, which require individual arbitration for all disputes arising out of or relating to Ring's products or services. (Motion at 10-23). Ring contends that all Plaintiffs must now be compelled to arbitrate their claims individually pursuant to Ring's Terms of Service. (*Id.*). The parties agree that California law applies here. (*See* Motion at 10; Opposition at 12).

Because Ring makes different arguments with respect to the Purchaser Plaintiffs and the Non-Purchaser Plaintiffs, the Court addresses each in turn.

### A. **Purchaser Plaintiffs**

Ring contends that the Purchaser Plaintiffs assented to the arbitration clause in the Terms of Service by purchasing and using Ring's products. (Motion at 10-15). Specifically, Ring asserts that each of the Purchaser Plaintiffs was put on constructive notice of the arbitration clause by one or more of the following: (1) the Devices' packaging; (2) the Ring App or Website when signing up for and creating a Ring account; and (3) this litigation. (Motion at 10-15).

There is no evidence that the Purchaser Plaintiffs had actual knowledge of the arbitration clause. (*See* Purchaser Plaintiff Declarations (Docket Nos. 89-1 through 89-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-10899-MWF (RAOx)	Date:  June 24, 2021
Title:	In Re: Ring LLC Privacy Litigation

27)).  As a result, the validity of the arbitration clause "turns on whether the [packaging, App, or Website] put[] a reasonably prudent user on inquiry notice of the terms of the contract."  *Nguyen*, 763 F.3d at 1177.  Whether the mutual assent necessary for contract formation exists "is determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."  *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813, 143 Cal. Rptr. 3d 810 (2012).  "Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court."  *Id*.  (internal quotation marks and citations omitted).

> 1.  **Creating an account on the Ring App or Website**

Ring asserts that the Purchaser Plaintiffs agreed to the Terms by creating a Ring account on the Ring App or Website.  (Motion at 12-14).  The Court agrees.

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract[,]" including the "requirement of mutual manifestation of assent, whether by written or spoken word or by conduct[.]"  *Nguyen*, 763 F.3d at 1175 (citations and internal alterations omitted).

Internet users can form contracts online in a variety of different ways, for example, by clicking on an "I agree" box after being presented with the website's list of terms and conditions of use ("clickwrap" agreements), by using a website that has its terms and conditions of use posted on the website via hyperlink at the bottom of the screen ("browsewrap" agreements), or by signing up for a website account or service in which the user is told that continued use will act as a manifestation of the user's intent to be bound by various terms ("hybrid design" or "modified clickwrap" agreements).  *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019).

To determine whether a user has inquiry notice of the contract terms, courts assess "the design and content of the website and the agreement's webpage[,]"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 19-10899-MWF (RAOx) | Date: **June 24, 2021** |
| Title: | In Re: Ring LLC Privacy Litigation | |

including "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design." *Nguyen*, 763 F.3d at 1177.

Courts are "more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement — that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website." *Id.* at 1176 (citing *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451-52 (E.D.N.Y. 2013) (enforcing forum selection clause where users had to check box confirming they read and agreed to the website's terms of service to obtain an account); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838-40 (S.D.N.Y. 2012) (enforcing forum selection clause in website's terms of service where a notice below the "Sign Up" button stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and user had clicked "Sign Up")). Courts have also been more amenable to enforcing browsewrap agreements "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound[.]" *Id.* at 1176 (listing cases).

In *Dohrmann v. Intuit*, a recent unpublished decision, the Ninth Circuit considered whether the TurboTax Website provided notice of its terms of use through its account sign-in page. 823 F. App'x 482, 484 (9th Cir. 2020) (reversing district court's denial of motion to compel arbitration). To sign into a TurboTax account, the user was required to enter her user ID and password, and click a "Sign In" button, directly under which the following language appeared: "By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement." *Id.* These terms were light blue hyperlinks which, if clicked, directed the user to a new page containing the terms of use in which the arbitration clause was located. *Id.* The Ninth Circuit held that this sign-in page provided sufficient notice to a reasonably prudent internet user of its Terms of Use, and therefore the arbitration clause, because "[t]he relevant warning language and hyperlink to the Terms of Use were conspicuous — they were the only text on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-10899-MWF (RAOx)**               **Date:  June 24, 2021**
**Title:**     In Re: Ring LLC Privacy Litigation

webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered." *Id.*

Similarly, *Lee v. Ticketmaster LLC* involved a website which, directly below the "Sign In" button, displayed the phrase:  "By continuing past this page, you agree to our Terms of Use."  817 F. App'x 393, 394 (9th Cir. 2020).  In addition, when placing an order for tickets, directly above the "Place Order" button, the website displayed the phrase:  "By clicking 'Place Order,' you agree to our Terms of Use."  *Id.*  The phrase "Terms of Use" was displayed in blue font and contained a hyperlink to Ticketmaster's Terms.  *Id.* at 394-95.  The *Lee* court reasoned that, because the website required users to "affirmatively acknowledge the agreement before proceeding," and "the website contained an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound," the website provided sufficient notice for constructive assent to Ticketmaster's terms.  *Id.* at 395 (quoting *Nguyen*, 763 F.3d at 1176-77) (internal quotation marks and alterations omitted).

While other persuasive authorities are all over the map in terms of what website features are sufficient to provide inquiry notice, it appears that the majority of California district courts take the *Dohrmann* and *Lee* approach.

These courts hold that a modified or hybrid clickwrap/browsewrap agreement constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately above or below a button that must be clicked to affirmatively acknowledge the terms, place an order, or register for an account.  *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) (user assented to terms where website provided an opportunity to review the terms of service in the form of a hyperlink immediately under the "I accept" button, which user clicked); *Crawford v. Beachbody, LLC*, 2014 WL 6606563 (S.D. Cal. 2014) (user assented to terms by clicking "PLACE ORDER" button appearing immediately below disclaimer informing user that by clicking the button, user was agreeing to the site's terms); *Rodriguez v. Experian Serv. Corp.*, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (user assented to terms where the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-10899-MWF (RAOx) | **Date:** June 24, 2021 |
| **Title:** In Re: Ring LLC Privacy Litigation | |

"Website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgement, which stated 'By clicking the button above . . . you agree to our Terms of Use,'" which were hyperlinked); *Graf v. Match.com, LLC*, CV 15-3911-PA (MRWx), 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (finding assent to terms where "all users of the Match.com website during the relevant time period were required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review"); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (user assented to terms by clicking "Sign Up" box with language immediately below it stating, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Use and Privacy Policy," with the terms of use hyperlinked); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (user assented to terms when he created an account on the Uber app by clicking "DONE" above disclaimer: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy"); *Nevarez v. Forty Niners Football Co., LLC*, 16-CV-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017) (user assented to terms in purchasing their tickets and parking passes on the Ticketmaster website which included a disclaimer below the "Accept and Continue" button stating: "By continuing past this past, you agree to our terms of use," where the terms were hyperlinked and in blue text); *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 895-97 (C.D. Cal. 2020) (user assented to terms by clicking "Place Order" button below disclaimer with hyperlinks to terms of use: "By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use").

At least four versions of Ring's account sign-up page resemble a clickwrap agreement in that they required the user to affirmatively acknowledge the agreement before the user could create the account. (*See* Appendix, Modestine Decl., Exs. L, M, Q). Ring's Terms of Service in these four versions of the Ring App and Website are even more conspicuous than the terms of use in *Dohrmann* and *Lee* because they required users to check a box affirmatively indicating that they agreed with Ring's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-10899-MWF (RAOx)				Date:  June 24, 2021
Title:	In Re: Ring LLC Privacy Litigation

Terms of Service before users could proceed to creating an account.  As in *Dohrmann* and *Lee*, the warning statement also hyperlinked the Terms of Service containing the arbitration clause.  These four versions of the Ring account signup page provided sufficient notice to a reasonably prudent internet user of Ring's Terms of Service and arbitration clause.

Three other versions of the Ring App and Website contain an explicit textual notice that creating an account will act as a manifestation of the user's intent to be bound by the Terms of Service.  (*Compare* Appendix, Modestine Decl., Exs. N, O, P, R) *with Arena v. Intuit Inc.*, 444 F. Supp. 3d 1086, 1088 (N.D. Cal. 2020), *rev'd and remanded sub nom. Dohrmann*, 823 F. App'x 482.  These versions of the Ring App and Website are arguably more conspicuous than the sign-in page in *Dohrmann* because the pages are less cluttered.  In at least in two versions (Exs. P and R), the warning text likewise appears directly above or below the create account button, and hyperlinks the Terms of Service, as denoted by the blue text.  These two versions of the App and Website (Exs. P and R) provided sufficient notice to a reasonably prudent internet user of Ring's Terms of Service and arbitration clause.

Although the version of the Ring App depicted in Exhibits N and O does not hyperlink the Terms in blue text, the warning text appears immediately below where the user enters her password, the Terms are underlined, and there are hardly any other words on the page.  While it is a much closer call, the Court determines that this version of the Ring App also provided sufficient constructive notice of the Terms.

Plaintiffs contend that *Dohrmann* is distinguishable because TurboTax users received notice of the terms of use every time they signed in to their accounts, whereas here, Ring notified users of the Terms of Service only once at the time of sign up.  (Opposition at 16-17).  The problem with this argument is that the Ninth Circuit's determination in *Dohrmann* did not turn on the fact that users received notice of the terms of use multiple times, but that the location and color of the hyperlinks, as well as the uncluttered design of the Website, made the warnings and terms of use sufficiently conspicuous.

**CIVIL MINUTES—GENERAL**                                                                                    11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-10899-MWF (RAOx)**                        **Date:  June 24, 2021**
**Title:**     In Re: Ring LLC Privacy Litigation

Accordingly, the Motion with respect to the Purchaser Plaintiffs who made accounts on the App or Website is **GRANTED**.

### 2. Scope and enforceability of the arbitration clause

Plaintiffs contend that, even if an arbitration agreement exists, it is unconscionable and unenforceable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 216 Cal. Rptr. 3d 627 (2017).  (Opposition at 19-23).

All Purchaser Plaintiffs who created an account after August 18, 2017, are subject to the same delegation provision in the Terms, which states that the arbitrator "shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to any claim that all or any part of these Terms are void or voidable, or whether a claim is subject to arbitration."  (Modestine Decl., Ex. C at 13).

Because this clause clearly and unmistakably delegates threshold arbitrability issues to an arbitrator, including enforceability, the Court may not decide whether the arbitration agreement is unconscionable or unenforceable.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (explaining that, before referring a dispute to an arbitrator, a court must first determine whether a valid arbitration agreement exists; if the agreement does exist, and "if it delegates the arbitrability issue to an arbitrator, the court may not decide the arbitrability issue").

Plaintiffs assert that many of the Purchaser Plaintiffs created their Ring accounts before the delegation provision was added to the Terms, and therefore, those Plaintiffs cannot be bound by the provision.  (Opposition at 17).  Ring admits that Plaintiffs Jason Ball, Lue Mayora, and Jerathen and Corrina Tillman created their Ring accounts prior to August 18, 2017, the date that the delegation provision was added to the Terms.  (Reply at 21).  However, Ring argues that these Plaintiffs are nonetheless bound by the delegation provision because they have continued to use the Devices

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-10899-MWF (RAOx)          Date:  June 24, 2021
Title:     In Re: Ring LLC Privacy Litigation

during this litigation, conduct which Ring contends constitutes assent to the current Terms and delegation provision.  (Reply at 21) (citing Motion at 24 n.18).

The Court agrees with Ring.  Courts have held that plaintiffs will be bound by a product's terms of use if they learn of the terms' existence during pending litigation and continue to use the product — "conduct that a reasonable person would understand to constitute assent." *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020) (citation and internal quotation marks omitted) (holding that the plaintiff received notice of the defendant's conditions of use when the defendant raised the conditions' arbitration clause as a ground for dismissal in the litigation because the plaintiff had admitted to making several purchases from the defendant since that date).  The Court agrees that these Plaintiffs' continued use of the Devices after being on constructive notice of the Terms through this lawsuit constitutes assenting conduct.

The Court concludes that the delegation provision applies to all Purchaser Plaintiffs who were on inquiry notice of the Terms, including those who created a Ring account before August 18, 2017.  Accordingly, Court does not decide whether the Purchaser Plaintiffs' claims fall within the scope of the arbitration agreement or whether the agreement is enforceable or unconscionable.  Because the parties agreed to delegate gateway arbitrability issues, those issues must be reserved for the arbitrator to resolve.  For the same reason, the Court does not address Ring's argument that each Plaintiff should be compelled to arbitrate his or her claims on an individual basis consistent with the Terms.  (*See* Motion at 22-23).

### B.     Non-Purchaser Plaintiffs

Ring makes three arguments as to why the Non-Purchaser Plaintiffs — the twelve minor children and one elderly woman — are also bound by the arbitration clause:  (1) the Purchaser Plaintiffs agreed to the arbitration clause on behalf of the Non-Purchaser Plaintiffs; (2) the Non-Purchaser Plaintiffs' preexisting relationship with a Purchaser Plaintiff makes it equitable to enforce the Terms; and (3) the Non-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 19-10899-MWF (RAOx) | Date: **June 24, 2021** |
| Title: In Re: Ring LLC Privacy Litigation | |

Purchaser Plaintiffs are equitably estopped from accepting the benefits while avoiding the burdens of the Terms. (*See* Motion at 15-22).

Ring asserts that the Non-Purchaser Plaintiffs are bound by the Terms as "Authorized Users." (*See* Motion at 16). The Terms define an Authorized User as "any person or entity authorized to access or use the Owner's Products and Services." (Modestine Decl., Ex. G at 2). While the Non-Purchaser Plaintiffs allege that they were passively exposed to the Devices that their guardians purchased and used, Ring puts forth no evidence showing that the Non-Purchaser Plaintiffs were ever authorized by their guardians to "***access or use***" the Devices. The Court agrees with Plaintiffs that extending Ring's definition of Authorized User to anyone who is knowingly or unknowingly surveilled by a Ring device — which is essentially what Ring proposes — would lead to absurd and unjust results. (*See* Opposition at 5 n.3).

Ring also argues that it is equitable to compel the Non-Purchaser Plaintiffs to be bound by the Terms because of their preexisting relationship with the Purchaser Plaintiffs, who had the implied authority to contract on their behalf. (Motion at 15-18).

Ring points to case law upholding agreements to arbitrate made by a parent on behalf of a child who is to receive services under the contract, reasoning that parents have the implied authority to contract on behalf of their children. (*See* Motion at 16-17). These cases are inapposite because they involve a parent or spouse's ability to enter into a contract on behalf of her child or spouse for medical care or school activities. *See Doyle v. Giuliucci*, 62 Cal. 2d 606, 610, 43 Cal. Rptr. 697 (1965) (holding that a parent's "power to enter into a contract for medical care that binds the child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child"); *Hawkins v. Superior Court*, 89 Cal. App. 3d 413, 419, 152 Cal. Rptr. 491 (1979) (holding that because spouses have a mutual obligation to care for and support the other, one spouse had the power to contract for medical care on behalf of the other spouse, and "implicit in that power is the implied authority to agree for himself and his wife to arbitrate claims arising out of medical malpractice"); *Hohe v. San Diego Unified School District*, 224 Cal. App. 3d 1559, 1564-65, 274 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-10899-MWF (RAOx) | Date:  June 24, 2021 |
| Title:     In Re: Ring LLC Privacy Litigation | |

Rptr. 647 (1990) (holding that liability waiver for school activity could be enforced against student because the waiver was signed by the parent on student's behalf); *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.*, 47 Cal. App. 4th 237, 242-43, 54 Cal. Rptr. 2d 628 (1996) (listing cases in support of rule that "a person who has authority to contract for medical services on behalf of another may, in the exercise of that authority, bind that person to an agreement to arbitrate his or her medical malpractice claims" and recognizing that "a preexisting relationship between the nonsignatory and one of the parties to the arbitration agreement is a common factor in these cases").

The Court is unconvinced that the authority to contract for goods beyond necessities like education or medical care is implicit in a parent or guardian's duty to provide for the care of her child or dependent.  Although Ring cites to two district court opinions binding non-signatory family members to adhesion contracts for consumer goods, these decisions are not binding on this Court.  (*See* Motion at 18; Reply at 16) (citing *Chan v. Charter Communications Holding Co.*, EDCV 15-886-JGB (KKx), 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015), *Tice v. Amazon.com, Inc.*, EDCV 19-1311-SVW (KKx), 2020 WL 1625782, at *3 (C.D. Cal. Mar. 25, 2020), *rev'd and remanded on other grounds*, 845 F. App'x 535 (9th Cir. 2021)).  Further, both courts relied upon California authorities such as *County of Contra Costa* without addressing the distinction between contracts for medical services and adhesion contracts for consumer goods.

The doctrine of equitable estoppel may also apply where a nonsignatory to a contract "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation and internal quotation marks omitted); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (explaining that there are two types of equitable estoppel in the arbitration context, one based on the "close relationship between the entities involved," and the other "where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having

| | |
|---|---|
| **CIVIL MINUTES—GENERAL** | 15 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV 19-10899-MWF (RAOx)                    Date:  June 24, 2021
Title:      In Re: Ring LLC Privacy Litigation

never signed the agreement'"). However, here, there is no evidence that any of the Non-Purchaser Plaintiffs *knowingly exploited* Ring's Terms here.

Accordingly, Ring has failed to meet its burden of proving by a preponderance of the evidence that the Non-Purchaser Plaintiffs agreed to arbitrate their claims. *See Norcia*, 845 F.3d at 1283.

The Motion with respect to the Non-Purchaser Plaintiffs is **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, the Motion with respect to the Purchaser Plaintiffs who made a Ring account using the Ring App or Website is **GRANTED**. The Motion with respect to the Non-Purchaser Plaintiffs is **DENIED**. The action shall proceed as to the Non-Purchaser Plaintiffs.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-10899-MWF (RAOx)                Date:  June 24, 2021
Title:     In Re: Ring LLC Privacy Litigation

# APPENDIX

 

(Ring App., May-Nov. 2017, Ex. L)    (Ring App., Nov. 2017-June 2018, Ex. M).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-10899-MWF (RAOx)          **Date:** June 24, 2021

Title:     In Re: Ring LLC Privacy Litigation




(Ring Website, Feb. 2018, Ex. Q)             (Ring Website, Sept. 2018, Ex. Q)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-10899-MWF (RAOx)          **Date:** **June 24, 2021**
**Title:** In Re: Ring LLC Privacy Litigation

 

(Ring App., Jun. 2018-May 2019, Exs. N, O) (Ring App., May 2019-Jan. 2020, Ex. P)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.   CV 19-10899-MWF (RAOx)**               **Date:  June 24, 2021**
**Title:        In Re: Ring LLC Privacy Litigation**



(Ring Website, April 2019-Jan. 2020, Ex. R)



*Compare to Dohrmann* agreement on right, *Arena v. Intuit Inc.*, 444 F. Supp. 3d 1086, 1088 (N.D. Cal. 2020), *rev'd and remanded sub nom. Dohrmann*, 823 F. App'x 482.

**CIVIL MINUTES—GENERAL**                                                                                  **20**