Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
Rachel R. Johnson (SBN 331351)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com
rjohnson@ahdootwolfson.com

*Interim Co-Lead Counsel for Plaintiffs and the Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Ring LLC Privacy Litigation*<br><br>This Document Relates To:<br>All Actions. | Master File No.: 2:19-cv-10899 MWF (RAOx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>DATE:   August 23, 2021<br>TIME:   10:00 a.m.<br>JUDGE:  Hon. Michael W. Fitzgerald<br>CTRM:   5A |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................... 1

II.    RING FAILED TO DEMONSTRATE THAT A STAY PENDING
APPEAL IS WARRANTED ............................................... 2

     A.     Legal Standard.......................................................... 2

     B.     Ring Has Not Demonstrated That Its Appeal Presents Serious Legal
Questions Warranting a Stay ......................................... 3

     C.     The Balance of Hardships Tips Heavily Against a Stay ............ 6

         1.     Ring Will Not Experience Irreparable Harm Absent a Stay ......... 6

         2.     A Stay Would Prejudice Non-Purchaser Plaintiffs ................. 9

         3.     The Public Interest Does Not Favor a Stay. ................. 10

III.   RING FAILS TO DEMONSTRATE THAT A STAY PENDING THE
RESOLUTION OF THE PURCHASER PLAINTIFFS' ARBITRATIONS IS
WARRANTED.................................................................. 11

     A.     Legal Standard........................................................ 12

     B.     Resolution of Purchaser Plaintiffs' Claims Will Not Determine the
Adjudication of Non-Purchaser Plaintiffs' Claims.................... 12

     C.     The Possibility of Inconsistent Rulings Does Not Favor a Stay........... 14

     D.     A Stay Will Delay Resolution of the Case and Impede
Judicial Economy....................................................... 15

IV.   CONCLUSION............................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*B.F. v. Amazon.com Inc.*,
  No. 19-CV-910-RAJ, 2020 WL 3548010 (W.D. Wash. May 15, 2020) ..................... 4

*Bain v. Film Indep., Inc.*,
  No. CV 18-4126 PA (JEMX), 2018 WL 6930770 (C.D. Cal. Oct. 11, 2018) .......... 14

*Berg v. Traylor*,
  56 Cal. Rptr. 3d 140 (Cal. Ct. App. 2007) ........................................................ 5

*Blair v. Rent-A-Ctr., Inc.*,
  928 F.3d 819(9th Cir. 2019) ........................................................................ 16

*Bradberry v. T-Mobile USA, Inc.*,
  No. C 06-6567 CW, 2007 WL 1241936 (N.D. Cal. Aug. 2, 2007) ............................ 7

*Britton v. Co-op Banking Grp.*,
  916 F.2d 1405, (9th Cir. 1990) ....................................................................... 2

*Brown v. Comcast Corp.*,
  No. EDCV1600264ABSPX, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) .............. 5

*Cesca Therapeutics Inc. v. SynGen Inc.*,
  No. 2:14-CV-2085-TLN-KJN, 2017 WL 1174062 (E.D. Cal. Mar. 30, 2017) ...3, 4, 7

*Chan v. Charter Communications Holding Co.*,
  No. EDCV 15-886-JGB (KKx), 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015).......... 4

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir.1962) ......................................................................... 12

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) ......................................................................... 6

*Congdon v. Uber Techs., Inc.*,
  226 F. Supp. 3d 983 (N.D. Cal. 2016) ............................................................ 13

*Cty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*,
  54 Cal. Rptr. 2d 628 (Cal. Ct. App. 1996), *as modified* (Aug. 1, 1996) ........................ 11

*Dekker v. Vivint Solar, Inc.*,
  No. C 19-07918 WHA, 2020 WL 2322916 (N.D. Cal. May 11, 2020) ...................... 3

*DKS Inc. v. Corporate Business Solutions, Inc.*,
  No. 2:15-cv-00132-MCE-DAD, 2015 WL 6951281 (E.D. Cal. Nov. 10, 2015) ........ 3

*Doyle v. Giuliucci*,
  401 P.2d 1 (Cal. 1965) ................................................................................. 5

*Fernandez v. Bridgecrest Credit Co., LLC*,
  No. EDCV 19-877-MWF-SHK, 2020 WL 7711837 (C.D. Cal. May 4, 2020) .......... 3

*Ferrari v. Mercedes Benz USA, LLC,*
  No. 17-CV-00018-YGR, 2018 WL 3399320 (N.D. Cal. Jan. 18, 2018)..............14, 15

*Fields v. Amazon,*
  No. 19-CV-910-RAJ, 2020 WL 3542653 (W.D. Wash. June 30, 2020)......................5

*Gillette v. Uber Techs., Inc.,*
  No. 14-cv-5241-EMC, 2015 WL 4481706 (N.D. Cal. July 22, 2015) ........................3

*Guifu Li v. A Perfect Day Franchise, Inc.,*
  No. 5:10-CV-01189-LHK, 2011 WL 2293221 (N.D. Cal. June 8, 2011) ...........3, 7, 9

*Jimenez v. Menzies Aviation, Inc.,*
  No. 15-cv-02392-WHO, 2015 WL 5591722 (N.D. Cal. Sept. 23, 2015)..............3, 10

*Landis v. North American Co.,*
  299 U.S. 248 (1936) ........................................................................................................12

*Lee v. Postmates Inc.,*
  No. 18-CV-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) ....................14

*Leiva–Perez v. Holder,*
  640 F.3d 962 (9th Cir. 2011) ......................................................................2, 6, 7, 9

*Leyva v. Certified Grocers of Cal., Ltd.,*
  593 F.2d 857 (9th Cir. 1979) ..............................................................................12, 15, 16

*McGill v. Citibank, N.A.,*
  216 Cal. Rptr. 3d 627 (Cal. Ct. App. 2017)........................................................10, 15

*McLellan v. Fitbit, Inc.,*
  No. 3:16-cv-00036, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ......................14, 15

*Mohamed v. Uber Techs.,*
  115 F. Supp. 3d 1024 (N.D. Cal. 2015)........................................................................7

*Morse v. Servicemaster Global Holdings, Inc.,*
  No. C10–628–SI, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ...............................2, 3, 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ..........................................................................................................15

*Mundi v. Union Sec. Life Ins. Co.,*
  555 F.3d 1042 (9th Cir. 2009) ......................................................................................5

*Munro v. Univ. of S. California,*
  No. CV166191VAPCFEX, 2017 WL 5592904 (C.D. Cal. July 7, 2017).............3, 8, 9

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................................................2

*Norcia v. Samsung Telecomms. Am.,*
  No. 14-cv-00582-JD, 2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ......................3, 9

PLAINTIFFS' OPPOSITION TO MOTION TO STAY
No. 2:19-cv-10899-MWF (RAOx)

*Pang v. Samsung Elecs. Am., Inc.,*
  371 F. Supp. 3d 633 (N.D. Cal. 2019)................................................................. 14

*R&L Ltd. Invs. Inc. v. Cabot Inv. Props., LLC,*
  No. CV 09-1575-PHX-MHM, 2010 WL 3789401 (D. Ariz. Sep. 21, 2010).........7, 10

*Shultz v. TTAC Publ'g, LLC,*
  No. 20-CV-04375-HSG, 2021 WL 1845532 (N.D. Cal. Mar. 8, 2021) ..................... 2

*Sunlight Prod. Techs. v. MPOWERD,*
  No. CV-15-126-MWF (JEM), 2015 WL 12655479 (C.D. Cal. Sept. 17, 2015) ........ 14

*Tice v. Amazon.com, Inc.,*
  EDCV 19-1311-SVW (KKx), 2020 WL 1625782 (C.D. Cal. Mar. 25, 2020),
  *rev'd and remanded on other grounds*, 845 F. App'x 535 (9th Cir. 2021) ....................... 4, 5

*Trompeter v. Ally Fin., Inc.,*
  914 F. Supp. 2d 1067 (N.D. Cal. 2012)................................................................. 10, 16

*Vasquez v. Libre by Nexus, Inc.,*
  No. 17-CV-00755-CW, 2018 WL 9868570 (N.D. Cal. Nov. 20, 2018)............... 10, 11

*Volkswagen Grp. of Am., Inc. v. Saul Chevrolet, Inc.,*
  No. 5:15-cv00505-ODW, 2015 WL 5680317 (C.D. Cal. Sept. 25, 2015)................. 3, 4

*Walmer v. United States DOD,*
  52 F.3d 851, 854 (10th Cir. 1995) ...................................................................... 3

*Youssefzadeh v. Glob.-IP Cayman,*
  No. 218CV02522JLSJCG, 2018 WL 6118436 (C.D. Cal. July 30, 2018).................. 14

**Statutes**

Cal. Civ. Code § 3513.......................................................................................... 16

**Other Authorities**

JAMS Rule 13........................................................................................................ 8

JAMS Rule 17........................................................................................................ 8

PLAINTIFFS' OPPOSITION TO MOTION TO STAY
No. 2:19-cv-10899-MWF (RAOx)

## I.   INTRODUCTION

In December 2019, hackers took advantage of the deficient security protocols and privacy protection in the home security devices sold by Defendant Ring LLC ("Ring") to gain unauthorized access to Plaintiffs' Ring devices. Hackers virtually invaded Plaintiffs' homes and shouted profanities, obscenities, and death threats at them. Other Plaintiffs suffered the loss of their personal identifying information ("PII") without their consent or authorization. Plaintiffs promptly filed these putative class actions against Ring. After consolidation and appointment of interim co-lead counsel, Ring moved to compel arbitration and for a stay of discovery. The Court denied the stay, but the Plaintiffs agreed to hold off on serving discovery until after the hearing on the motion to compel in exchange for Ring agreeing to cooperate with them to finalize a protective order and ESI protocol. Declaration of Hassan Zavareei ¶ 5. Now that the Court has ruled on the arbitration motion, Dkt. No. 113 ("Order"), and discovery has finally begun—with Ring providing woefully inadequate responses to Plaintiffs' first set of discovery requests—Ring is once again moving for a stay. Motion to Stay Proceedings ("Mot."), Dkt. No. 120.

Ring proposes two bases to stay the proceedings. Because Ring fails to meet its burden for either request for a stay, this Court should deny Ring's Motion.

First, Ring requests that the Court stay the proceedings pending resolution of its appeal of the Court's Order. But Ring fails to meet the Ninth Circuit's four-factor test to show that it is entitled to such a stay. Not only does Ring fail to show that it has a likelihood of success on the merits, but the balance of harms weighs heavily against a stay. Ring's argument that it will incur discovery and motion expenses falls far short of the irreparable harm needed to justify even further delay of Non-Purchaser Plaintiffs' ability conduct discovery, which risks compromising the quality of evidence for them and for the putative class.

Second, Ring requests that the Court stay the proceedings pending the resolution of Purchaser Plaintiffs' claims in arbitration. Because the claims of Non-Purchaser Plaintiffs

- 1 -

and the class do not depend on the resolution of the Purchaser Plaintiffs' claims, such a stay would do nothing but create delay without preserving judicial economy. As the balance of interests weighs against such a stay, Plaintiffs respectfully request the Motion be denied.

## II. RING FAILED TO DEMONSTRATE THAT A STAY PENDING APPEAL IS WARRANTED

### A. Legal Standard

The party requesting a stay pending appeal "bears the burden of showing that the case's circumstances justify favorable exercise of [the Court's] discretion." *Morse v. Servicemaster Global Holdings, Inc.*, No. C10–628–SI, 2013 WL 123610, at *1 (N.D. Cal. Jan. 8, 2013) (citing *Nken v. Holder,* 556 U.S. 418, 433-34 (2009)). In determining whether to issue a stay, courts consider four factors: (1) whether the moving party has made a strong showing that it is likely to succeed on the merits; (2) whether the moving party will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay. *Leiva–Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011); *Nken,* 556 U.S. at 434. In weighing these factors, courts apply a "sliding scale," such that "a stronger showing of one [factor] may offset a weaker showing of another." *Leiva–Perez,* 640 F.3d at 964. To that end, a moving party who cannot satisfy a strong likelihood of success under the first factor, must at minimum show that its appeal presents "a substantial case on the merits" and must demonstrate "that the balance of hardships under the second and third factors tilts *sharply* in its favor." *Morse*, 2013 WL 123610, at *2 (citing *Leiva–Perez,* 640 F.3d at 966, 970) (emphasis in original).

Contrary to Ring's assertion, stays are not "routinely" granted under this standard. Mot. at 4. Rather, a routine grant of a stay "would allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). Thus, when a party fails to show a likelihood of success on the merits or fails to show irreparable harm, courts will deny an application for a stay. *See, e.g., Shultz v. TTAC Publ'g, LLC*, No. 20-CV-04375-HSG, 2021 WL 1845532, at *1 (N.D. Cal. Mar. 8, 2021); *Dekker v. Vivint Solar, Inc.*, No. C 19-07918 WHA, 2020 WL 2322916, at *1

- 2 -

(N.D. Cal. May 11, 2020); *Fernandez v. Bridgecrest Credit Co., LLC*, No. EDCV 19-877-MWF-SHK, 2020 WL 7711837, at *1 (C.D. Cal. May 4, 2020); *Munro v. Univ. of S. California*, No. CV166191VAPCFEX, 2017 WL 5592904, at *5 (C.D. Cal. July 7, 2017); *Cesca Therapeutics Inc. v. SynGen Inc.*, No. 2:14-CV-2085-TLN-KJN, 2017 WL 1174062, at *4 (E.D. Cal. Mar. 30, 2017); *DKS Inc. v. Corporate Business Solutions, Inc.*, No. 2:15-cv-00132-MCE-DAD, 2015 WL 6951281, at *1-2 (E.D. Cal. Nov. 10, 2015); *Volkswagen Grp. of Am., Inc. v. Saul Chevrolet, Inc.*, No. 5:15-cv00505-ODW, 2015 WL 5680317, at *4 (C.D. Cal. Sept. 25, 2015); *Jimenez v. Menzies Aviation, Inc.*, No. 15-cv-02392-WHO, 2015 WL 5591722, at *2-3 (N.D. Cal. Sept. 23, 2015); *Norcia v. Samsung Telecomms. Am.*, No. 14-cv-00582-JD, 2015 WL 4967247, at *2-3 (N.D. Cal. Aug. 20, 2015); *Morse*, 2013 WL 123610, at *3; *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *3-5 (N.D. Cal. June 8, 2011); *see also Gillette v. Uber Techs., Inc.*, No. 14-cv-5241-EMC, 2015 WL 4481706, at *2 n.2 (N.D. Cal. July 22, 2015) ("[A]ccording to this Court's unofficial tally of decisions . . . California district courts have denied stays pending appeal of an order denying a motion to compel arbitration twelve times, while California district courts have granted such motions eight times.").

### B. Ring Has Not Demonstrated That Its Appeal Presents Serious Legal Questions Warranting a Stay

Ring does not even attempt to make a showing that it has a strong likelihood of success on the merits. Ring argues instead that its appeal raises "serious legal questions." Mot. at 5-10. However, the fact that a defendant has requested "a review of the district court's decision does not automatically mean that [it has] raised a 'serious legal question' on appeal." *Guifu Li*, 2011 WL 2293221, at *3. "For a legal question to be 'serious,' it must be a 'question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.'" *Id.* (quoting *Walmer v. United States DOD*, 52 F.3d 851, 854 (10th Cir. 1995)). In this Circuit, "serious legal questions often concern constitutionality." *Id.* at *2. Even if an issue is one of first impression, this is not, by itself, sufficient to show an appeal is a "substantial case which 'raises serious legal questions, or has a reasonable probability or fair prospect of success.'" *Volkswagen Grp. of Am., Inc.*, 2015

- 3 -

WL 5680317, at *4 ("It is difficult to conceive of an appeal presenting a 'substantial question' where, for example, the argument is novel but completely frivolous."). Further, courts have found that failing to raise new substantive arguments that were not raised in the motion to compel "weighs against likelihood of success on the merits." *Cesca Therapeutics Inc.*, 2017 WL 1174062, at *3.

Here, Ring has raised no "serious, substantial, difficult and doubtful" issues, and certainly no constitutional issues. Instead, Ring merely recycles the already-rejected arguments advanced in its original motion to compel arbitration.

First, Ring argues that there is a serious legal question regarding whether the Non-Purchasers Plaintiffs' preexisting relationship with Purchaser Plaintiffs makes it equitable to enforce Ring's Terms of Service ("the Terms") against them. Mot. 5-6. Ring cites *Chan v. Charter Communications Holding Co.*, No. EDCV 15-886-JGB (KKx), 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015), and *Tice v. Amazon.com, Inc.*, EDCV 19-1311-SVW (KKx), 2020 WL 1625782, at *3 (C.D. Cal. Mar. 25, 2020), *rev'd and remanded on other grounds*, 845 F. App'x 535 (9th Cir. 2021), for the proposition that there is a split in authority over this issue. But Ring overstates the extent of any split. Because the nonsignatory children in *Chan* were not parties to the case, it was "irrelevant whether they agreed to arbitrate." 2015 WL 12655701, at *5. And *Tice*, involved a spouse who voluntarily utilized the product, 2020 WL 1625782, at *3, not a dependent that was passively exposed to it. In addition, as this Court explained, "both courts relied upon California authorities such as *County of Contra Costa* without addressing the distinction between contracts for medical services and adhesion contracts for consumer goods." Order at 15.

Ring notes that under similar factual circumstances to this case, a Western District of Washington court found that a conflict between that court's decision denying a motion to compel arbitration and *Tice* raised a serious question of law that merited granting a stay. *B.F. v. Amazon.com Inc.*, No. 19-CV-910-RAJ, 2020 WL 3548010, at *3 (W.D. Wash. May 15, 2020), *report and recommendation adopted sub nom. B.F. by & through Fields v. Amazon*, No. 19-CV-910-

- 4 -

PLAINTIFFS' OPPOSITION TO MOTION TO STAY
No. 2:19-cv-10899-MWF (RAOx)

RAJ, 2020 WL 3542653 (W.D. Wash. June 30, 2020). However, as that court noted, and unlike the Order at issue here, the serious legal question remained in part because the court's opinion had not addressed the potential conflict with *Tice.* 2020 WL 3542653, at *3. Moreover, the Ninth Circuit has since affirmed the denial of the motion to compel arbitration in *B.F. v. Amazon.com*, holding that under Washington law, a close-relationship theory of estoppel—absent knowing exploitation of the contract by the nonsignatory—may be used only by nonsignatories to a contract to bind signatories, not the reverse. *B.F. v. Amazon.com Inc*, No. 20-35359, 2021 WL 1593003, at *2 (9th Cir. Apr. 23, 2021) (distinguishing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009)).

Second, Ring argues that whether *Doyle v. Giuliucci*, 401 P.2d 1 (Cal. 1965), which involved parental rights to contract on behalf of their children for medical or necessary services, applies to consumer contracts, is an issue of first impression for the Ninth Circuit and California courts, and is therefore necessarily also a serious legal question that weighs in favor of granting a stay. But *Doyle* itself makes clear that the power to enter into a contract for medical care that binds a child is "implicit in a parent's right and duty to provide for the care of his child." 401 P.2d at 3. "Since minors can usually disaffirm their own contracts to pay for medical services, it is unlikely that medical groups would contract directly with them" absent an ability of parents to contract on their children's behalf. *Id.* There is no similarly compelling reason to allow parents to contract for services that are not medical or not necessary. And other California courts have followed *Doyle*'s reasoning to allow minors to disaffirm contracts entered into on their behalf that do "not implicate a parent's fundamental duty to provide for the care and health of a child." *Berg v. Traylor*, 56 Cal. Rptr. 3d 140, 147 (Cal. Ct. App. 2007); *see also Brown v. Comcast Corp.*, No. EDCV1600264ABSPX, 2016 WL 9109112, at *4 (C.D. Cal. Aug. 12, 2016) (denying motion to compel arbitration because "the recognized preexisting relationships in *County of Contra Costa . . .* are all 'grounded in the authority of the signatory to contract for medical services on behalf of the nonsignatory'"

- 5 -

(citation omitted)). Contrary to Ring's suggestion, there is nothing novel about the Court's decision here.

Ring's remaining arguments—that Non-Purchaser Plaintiffs "knowingly exploited" the Terms such that equitable estoppel is available, and that Non-Purchaser Plaintiffs are included "Authorized User[s]" under the Terms—have an even lower prospect of success on appeal. With respect to the first argument, an individual only "knowingly exploit[s]" the terms of an agreement when he or she brings claims that arise out of that agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) (holding that the non-signatory, who neither sought to enforce the terms of the management agreement nor sued under its provisions, did not knowingly exploit that agreement and could not be estopped from avoiding arbitration); *cf. B.F.*, 2021 WL 1593003, at *2 (holding, under Washington law, that because "[p]laintiffs are not asserting any right or looking to enforce any duty created by the contracts between their parents and defendants" equitable estoppel did not apply). Non-Purchaser Plaintiffs do not bring contract claims. Their claims arise out of Ring's failure to prevent the hacking of their devices, a breach of an independent duty that Ring owed to them irrespective of any contract with their parents or guardians. *See* Opp. to Mot. to Compel (Dkt. No. 89) at 10. With respect to the argument that Non-Purchaser Plaintiffs are "Authorized User[s]," Ring cannot seriously dispute that the only reasonable interpretation of "Authorized User" is someone with *meaningful* access to the account, and not "anyone who is knowingly or unknowingly surveilled by a Ring device." Order at 15.

As Ring has failed to demonstrate that its appeal raises a substantial case on the merits, much less that it is likely to succeed on appeal, this factor weighs against granting a stay.

## C. The Balance of Hardships Tips Heavily Against a Stay

### 1. *Ring Will Not Experience Irreparable Harm Absent a Stay*

The "burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as [Ring] must show that an irreparable injury is the more probable or likely outcome." *Leiva-Perez*, 640 F.3d at 968. When the moving party has not met its burden, "then

- 6 -

a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Id.* at 965. Because Ring does not argue that it has a strong likelihood of success—and instead relies on the alternative serious question framework—Ring may only succeed when this prong *sharply* tips in its favor. *Id.* at 964.

Further, Ring must show "there is a reason specific to [its] case, as opposed to a reason that would apply equally well to all" those seeking a stay pending review of a denial to compel arbitration. *Id.* at 969; *Cesca Therapeutics Inc.*, 2017 WL 1174062, at *4. Notably, financial burden from litigation conduct is not an irreparable harm because "[i]f financial burden was an irreparable harm, then every interlocutory appeal of a denial to compel arbitration would automatically be stayed, a finding which is contrary to Ninth Circuit precedent." *Cesca Therapeutics Inc.*, 2017 WL 1174062, at *4; *see also, e.g., Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1032–33 (N.D. Cal. 2015) ("[N]early all courts 'have concluded that incurring litigation expenses does not amount to an irreparable harm.'" (quoting *Guifu Li*, 2011 WL 2293221, at *4 )); *Morse*, 2013 WL 123610, at *3 ("[T]he money and time a party must expend in that process, while burdensome, does not alone constitute irreparable injury"); *Guifu Li*, 2011 WL 2293221, at *4 ("incurring litigation expenses does not amount to an irreparable harm"); *R&L Ltd. Invs. Inc. v. Cabot Inv. Props., LLC*, No. CV 09-1575-PHX-MHM, 2010 WL 3789401, at *2 (D. Ariz. Sep. 21, 2010) ("Here, it appears the only litigation costs that will be incurred while the parties await appeal are discovery costs, which do not constitute irreparable injury."); *Bradberry v. T-Mobile USA, Inc.*, No. C 06-6567 CW, 2007 WL 1241936, at *4 (N.D. Cal. Aug. 2, 2007) ("The cost of some pretrial litigation does not constitute an irreparable harm to Defendant.").

Here, Ring argues that it will be irreparably harmed absent a stay because it will incur the expense of engaging in class discovery and motion practice. Mot. at 10-12. But Ring's arguments miss the mark. Ring will incur many of the same expenses regardless of whether the claims are adjudicated before the district court or in arbitration. Although Ring is correct that the JAMS Arbitration rules provide for less formal discovery than do the Federal Rules

- 7 -

of Civil Procedure, Mot. at 11-12, they do require parties to exchange "all non-privileged documents and information (including electronically stored information ('ESI')) relevant to the dispute or claim," provide for expert testimony, allow third-party discovery, and provide for the examination of witnesses. *See* JAMS Rules 13 and 17. Ring has not shown that the financial burden would be significantly less in arbitration. As decisions in this district have noted in similar circumstances, "the burden created by the time and expense Defendants will spend in this Court's discovery process is significantly mitigated by the reality that Defendants' arbitration discovery process would also result in a similar amount of time and expense." *Munro*, 2017 WL 5592904, at *4.

Moreover, if Ring eventually prevails on its appeal—and there is no indication it will—and the case proceeds to arbitration, the parties will be better prepared to address the merits of their dispute because of the discovery they conducted while the appeal was pending. Stated otherwise, even if Ring "eventually prevailed on its appeal, the discovery costs of the arbitration process will be reduced by any discovery completed in this Court." *Munro*, 2017 WL 5592904, at *4. Thus, no matter the outcome of the appeal, continued proceedings in this Court will produce a more expeditious outcome for all parties.

That Non-Purchaser Plaintiffs bring their claims on behalf of a class does not alter the analysis in this case. First, Ring provides no reason to think that litigating the case on a class-wide basis would be more burdensome. Many of the central facts affecting liability are common to all plaintiffs. For example, whether Ring's security systems are defectively designed, First Amended Complaint ¶¶ 3-8, is a common question of fact that applies equally to all plaintiffs and is central to determining Ring's liability. Resolving this question will involve expert examination of the Ring's hardware and software products, as well as its security practices, such that adjudicating these claims together, rather than over multiple cases, would actually reduce the litigation burden. Further, although class discovery involves examination of questions distinct from the merits (*e.g.*, whether the class representatives are typical, whether the class representatives can adequately represent the class, whether the class

PLAINTIFFS' OPPOSITION TO MOTION TO STAY
No. 2:19-cv-10899-MWF (RAOx)

is sufficiently numerous), discovery into these issues is not so burdensome as to undermine the general rule that incurring litigation costs is not an irreparable harm. Third, this Court did not address Ring's argument that Purchaser Plaintiffs be compelled to arbitrate on an individual basis, and Plaintiffs will bring this issue before the arbitrator. Courts in this Circuit have denied motions to stay when the underlying litigation involved class claims. *See, e.g.*, *Guifu Li*, 2011 WL 2293221, at *5; *Munro*, 2017 WL 5592904, at *4 n.1; *Norcia*, 2015 WL 4967247, at *1.

Finally, Ring argues that a reversal on appeal would render any substantive pretrial rulings "non-binding advisory opinions." Mot. at 12. Putting aside the fact that this will always be the case when there is an interlocutory appeal of a motion to compel arbitration, and therefore not a burden "specific to [this] case," *Leiva-Perez*, 640 F.3d at 968, if the Court agrees that adjudicating the merits of the case imposes an additional, significant burden, it should allow discovery to proceed without prejudice to a renewed motion to stay in the event the case proceeds to summary judgment or to final pretrial preparations.

In sum, proceeding with the discovery phase of this litigation will not cause Ring significant, let alone irreparable, harm. Accordingly, Ring has not met its threshold showing that irreparable harm is probable or likely absent a stay, much less that the balance of harms would tip sharply in its favor.

### 2. *A Stay Would Prejudice Non-Purchaser Plaintiffs*

Throughout this litigation, despite the strong likelihood that many of Plaintiffs' claims would be litigated in federal court rather than before an arbitrator, *see* Dkt No. 75 at 7-13 (explaining that Non-Purchaser Plaintiffs' claims for damages and all plaintiffs' claims with respect to public injunctive relief would be litigated in federal court), Ring has consistently sought to delay and obstruct. Now it seeks to delay discovery once again even though, as explained above, it faces no irreparable harm from the denial of a stay. Because the parties will conduct discovery and adjudicate the case regardless of whether the ultimate forum is this court or in arbitration, Ring faces the same costs and burdens of litigation.

By contrast, further delay in the prosecution of this action will cause harm to Non-Purchaser Plaintiffs and the putative class. It is now more than 18 months since the hack of Ring's devices and the filing of the Complaint, and there has been no discovery provided by Ring in this case. "Critical information and records," as well as "related policies and practices could be lost if the proceedings are stayed." *Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067, 1078 (N.D. Cal. 2012). Ring personnel may leave or retire, or forget important facts, as time passes. Consequently, a stay is likely to prejudice Non-Purchaser Plaintiffs in pursuing their claims. *See id.*; *Vasquez v. Libre by Nexus, Inc.*, No. 17-CV-00755-CW, 2018 WL 9868570, at *3 (N.D. Cal. Nov. 20, 2018) (finding that "[d]elay of relief for Plaintiffs would constitute irreparable harm to them"); *R&L Ltd. Investments*, 2010 WL 3789401, at *3 ("[W]hether the case is ultimately arbitrated or not, it is in Plaintiff's best interest to undertake discovery sooner rather than later.").

Finally, that the Purchaser Plaintiffs' claims ultimately may proceed in arbitration does not resolve the issue. Although Purchaser Plaintiffs are eager to pursue discovery and will be willing to do so regardless of forum, it is possible that the arbitration tribunal will stay discovery pending the resolution of threshold questions such as whether the Purchaser Plaintiffs' claims fall within the scope of the arbitration agreement or whether the agreement is unenforceable and unconscionable under *McGill v. Citibank, N.A.*, 216 Cal. Rptr. 3d 627 (Cal. Ct. App. 2017). Order at 13.

This factor weighs against issuing a stay.

### 3.     *The Public Interest Does Not Favor a Stay.*

Ring argues that the policy in favor of arbitration and the interests of judicial economy favor a stay. These arguments beg the question, presuming that Non-Purchaser Plaintiffs are bound by Ring's Terms. While there is an interest under the Federal Arbitration Act in enforcing valid arbitration agreements, "the existence of a federal policy favoring arbitration does not, by itself, require a stay." *Jimenez*, 2015 WL 5591722, at *4. Moreover, "[t]he fundamental assumption of arbitration is that it may be invoked as an alternative to the

settlement of disputes by means other than the judicial process solely because all parties have chosen to arbitrate them. Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." *Cty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 54 Cal. Rptr. 2d 628, 632–33 (Cal. Ct. App. 1996), *as modified* (Aug. 1, 1996) (citations omitted). Nor, as discussed above, do judicial efficiency and conservation of resources favor a stay. The parties will conduct the same discovery in either forum, and any discovery conducted in this Court will also advance the status of any arbitration.

Finally, Ring ignores the strong countervailing public policy of public access to federal courts and speedy, efficient, and just relief. The public has an interest in private parties being permitted to expeditiously investigate and pursue claims. *Vasquez*, 2018 WL 9868570, at *3. Advancing the case in this forum bolsters the interest in informing the public who may not be aware that they are being harmed. *Id.*

***

Because Ring has failed to meet its burden under the Ninth Circuit's four-factor test to show it is entitled to a stay, this Court should deny Ring's request to stay the proceedings pending appeal.

## III. RING FAILS TO DEMONSTRATE THAT A STAY PENDING THE RESOLUTION OF THE PURCHASER PLAINTIFFS' ARBITRATIONS IS WARRANTED

In addition to seeking to delay discovery and adjudication of the claims of Non-Purchaser Plaintiffs and the class of similarly situated non-purchasers pending its appeal, Ring further seeks delay by moving to stay these proceedings pending the resolution of the arbitration of the Purchaser Plaintiffs' claims. The Court should decline to exercise its discretion to issue such a stay. First, a stay would not preserve judicial resources. As Non-Purchaser Plaintiffs are entitled to litigate their claims in federal court, discovery and adjudication of these causes of action will proceed in federal court—either now or when the arbitrations conclude. Nor does a stay reduce the risk of inconsistent outcomes; neither legal

nor factual decisions by the arbitral tribunal with respect to the Purchaser Plaintiffs are binding on this court's determination of the Non-Purchaser Plaintiffs' or the class's claims. Finally, any piecemeal or inconsistent outcomes will be the result of Rings' voluntary decision to compel arbitration of Purchaser Plaintiffs' claims.[1] Ring does not provide a compelling reason to delay discovery any further.

### A.   Legal Standard

Although courts have discretion to issue stays of federal proceedings pending resolution of arbitrations, the standard for such a discretionary stay is exacting. As the Supreme Court stated in *Landis v. North American Co.*, 299 U.S. 248 (1936), the movant "for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255; *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.1962) (stating that in determining whether to impose a stay, the court must weigh competing interests of possible damage that may result from the granting of a stay, the hardship or inequity a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law that could be expected to result from a stay). Further, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

### B.   Resolution of Purchaser Plaintiffs' Claims Will Not Determine the Adjudication of Non-Purchaser Plaintiffs' Claims

Despite Ring's repeated assertions to the contrary, Mot. at 16-19, the claims of Non-Purchaser Plaintiffs and the non-purchaser class are neither dependent on nor inseparable from Purchaser Plaintiffs' claims. Although Ring is correct in its observation that the claims

---

[1] Ring also seeks to compel Purchaser Plaintiffs to arbitrate on an individual basis. *See* Order at 13 (declining to decide issue). If the arbitral tribunal agrees, this too may lead to duplicative discovery and inconsistent outcomes.

- 12 -

of all plaintiffs revolve around many of the same factual and legal questions, Mot. at 16-17—for example, regarding whether Ring's software, hardware, and security systems were defectively designed—the proceedings involve independent lawsuits between different parties. Until and unless a class is certified, that the actions are brought against the same defendant and allege the same injuries does not make the claims legally interrelated. And Ring does not provide any authority for the proposition that the familial relationship between Non-Purchaser named plaintiffs and Purchaser Plaintiffs changes the analysis. Ring also is wrong in its assertion that Non-Purchaser Plaintiffs' causes of action depend on the successful resolution of Purchaser Plaintiffs' claims. Ring had an independent duty to ensure that its products were adequately secure, and is liable to the foreseeable victims of its failure to do so.

*Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016), is instructive. There the court granted Uber's motion to compel arbitration of the claims of plaintiffs who had not opted out of its arbitration agreement. But the court denied Uber's motion to stay the proceedings of the plaintiffs who had opted out. As the court explained, although the actions involved the same underlying conduct by Uber, the resolution of the claims of plaintiffs who had entered into the arbitration agreement had "no bearing" on the resolution of the claims of plaintiffs who had not done so. *Id.* The court also explained that staying the proceeding would not preserve judicial resources because there was no preclusive or binding effect of any arbitral decisions on the claims of those not subject to the agreement, and therefore, the lawsuits of the opt-out plaintiffs would ultimately be litigated in federal court. *Id.* at 991. The court found unpersuasive the argument that the possibility of inconsistent results justified delaying judicial resolution of the claims of the plaintiffs and class members who opted out of arbitration. *Id.* ("[A]s other courts have acknowledged, the potential for inconsistent results in this forum is insufficient.").

Other courts have followed suit, particularly in cases, such as this one, where the delay would affect the adjudication of the claims of a putative class. *See, e.g.*, *Ferrari v. Mercedes Benz*

- 13 -

*USA, LLC*, No. 17-CV-00018-YGR, 2018 WL 3399320, at *2 (N.D. Cal. Jan. 18, 2018) ("Delaying resolution of the individual claims has the potential to prejudice the remaining plaintiffs and putative class members. The resolution of the individual claims in arbitration will have little to no bearing on the resolution of the claims herein."); *Pang v. Samsung Elecs. Am., Inc.*, 371 F. Supp. 3d 633, 641 (N.D. Cal. 2019) (denying motion to stay entire putative class action pending arbitration of individual claims of those subject to arbitration agreement); *Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *12 (N.D. Cal. Oct. 15, 2018) (denying stay in putative class action).

   In support of implementing a stay, Ring cites a multitude of cases where courts stayed non-arbitrable claims pending the resolution of arbitrable claims. The vast majority of these cases involve arbitrable and non-arbitrable claims raised by the *same* plaintiffs and therefore implicate policy concerns regarding inadvertently impinging on the arbitrators' jurisdiction. *See, e.g.*, *Sunlight Prod. Techs. v. MPOWERD*, No. CV-15-126-MWF (JEM), 2015 WL 12655479 (C.D. Cal. Sept. 17, 2015); *Youssefzadeh v. Glob.-IP Cayman*, No. 218CV02522JLSJCG, 2018 WL 6118436 (C.D. Cal. July 30, 2018); *Bain v. Film Indep., Inc.*, No. CV 18-4126 PA (JEMX), 2018 WL 6930770, at *1 (C.D. Cal. Oct. 11, 2018). No such concerns exist here.

## C.   The Possibility of Inconsistent Rulings Does Not Favor a Stay

   Ring argues that the possibility of inconsistent factual and legal rulings within households favors a stay. But Ring fails to explain how staying the federal court proceedings would resolve this potential issue. As nonparties to the Terms, Non-Purchaser Plaintiffs are entitled to pursue their claims in federal court. The court does not owe deference to any potential arbitral decisions of fact or law; nor would such decisions have *res judicata* effect with respect to the claims of Non-Purchaser Plaintiffs here. To the extent Non-Purchaser Plaintiffs' claims depend on the same legal or factual question as one raised in the Purchaser Plaintiffs' arbitration, Non-Purchasers are entitled to litigate that question again in federal court. *See McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017) (noting that the defendant had "not shown that the outcome of the arbitration

- 14 -

proceedings will have any effect on this Court's consideration" of the claims of the plaintiff not bound by the arbitration agreement).

Moreover, "[t]he mere potential for inconsistent results as between the arbitral forum and the litigation, standing alone, does not establish a sufficient basis for staying the claims in litigation." *Ferrari*, 2018 WL 3399320, at *2. "Parallel proceedings may raise the risk of inconsistency, but the FAA contemplates 'requir[ing] piecemeal resolution when necessary to give effect to an arbitration agreement.'" *McLellan*, 2017 WL 4551484, at *5 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)). The mere possibility of inconsistent rulings is not sufficient to further delay this case.

**D.    A Stay Will Delay Resolution of the Case and Impede Judicial Economy**

"A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864. Contrary to Ring's arguments that a stay would bolster judicial economy, Mot. 20-22, granting a stay in this case would serve only to drag out the proceedings even further.

Central to Ring's argument for a stay pending arbitration is its assumption that the Purchaser Plaintiffs' claims ultimately will be adjudicated in arbitration. But several threshold questions regarding the scope and enforceability of the Terms have been delegated to, and will need to be determined by, the arbitrator. If Plaintiffs prevail on those issues, Purchaser Plaintiffs' claims may return to this Court, or at the very least their claims may be arbitrated on a class-wide basis, rather than individually, as Ring hopes.

For example, Purchaser Plaintiffs argue that the arbitration agreement is unconscionable and unenforceable under *McGill*, 216 Cal. Rptr. 3d 627, because it would deny their right to seek public injunctive relief. In *McGill*, the California Supreme Court held that a predispute arbitration agreement purporting to waive the "right to request in any forum such public injunctive relief . . . is invalid and unenforceable under California law." *Id.* at 961. Such agreements run afoul of the principle that one cannot waive by private agreement the

- 15 -

right to seek relief that would benefit the public. *See id.*; *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) ("Because this waiver prevented the plaintiff from seeking a public injunction in any forum, it was unenforceable under California Civil Code § 3513."); Cal. Civ. Code § 3513 ("A law established for a public reason cannot be contravened by private agreement."). In the event the arbitrator agrees that the arbitration agreement is unconscionable to the extent it restrains Purchaser Plaintiffs' ability to seek a public injunction, the arbitrator will remand the claims providing for that remedy—that is, the claims brought under California's Unfair Competition Law and California's Consumer Legal Remedies Act—for resolution before this Court.

Plaintiffs also intend to make additional arguments to the arbitrator concerning the arbitration agreement's procedural and substantive unconscionability, which this Court expressly did not address in its Order on Defendant's motion to compel. *See* Order at 13.

Moreover, regardless of the arbitrator's resolution of Purchaser Plaintiffs' threshold arguments, resolving these questions regarding the enforceability of the Terms may take several months and will likely delay discovery and adjudication before the arbitral tribunal. Under these circumstances, it does not appear likely that the arbitrations will be "concluded within a reasonable time," *Leyva*, 593 F.2d at 864, such as to justify the harm to Non-Purchaser Plaintiffs caused by the delay. *Cf. Trompeter*, 914 F. Supp. 2d at 1078 (noting the harms caused by delay, including the loss of "[c]ritical information and records").

Finally, as discussed above, regardless of whether the Court grants the motion to stay, because any arbitration decisions regarding the Purchaser Plaintiffs' claims are not binding on the Non-Purchaser Plaintiffs, Non-Purchaser Plaintiffs' claims will ultimately be litigated in this forum. A stay would therefore do nothing to preserve judicial economy; it would simply delay justice.

## IV. CONCLUSION

For the forgoing reasons, Non-Purchaser Plaintiffs respectfully request that the Court deny Ring's motion to stay the proceedings pending appeal or arbitration.

- 16 -

Dated: August 2, 2021

Respectfully submitted,

*/s/Hassan A. Zavareei*
Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com

Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
Rachel R. Johnson (SBN 331351)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com
rjohnson@ahdootwolfson.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

- 17 -