Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Hassan A. Zavareei (SBN 181547)
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

*Interim Co-Lead Counsel for Plaintiffs
and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Ring LLC Privacy Litigation*<br><br>This Document Relates To:<br>All Actions. | Master File No.: 2:19-cv-10899 MWF (RAOx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:   October 30, 2023<br>TIME:    10:00 a.m.<br>JUDGE:  Hon. Michael W. Fitzgerald<br>CTRM:  5A |

## <u>NOTICE OF MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 30, 2023, at 10:00 a.m., in Courtroom 5A of the above-captioned Court before the Honorable Michael W. Fitzgerald, Plaintiffs Marco Mariutto, Yolanda Martinez, Jeannette Pantoja, Johnny Powell, and Abhi Sheth (collectively, "Plaintiffs"), will and hereby do move for an Order Granting Preliminary Approval of Class Action Settlement, pursuant to the Class Action Settlement Agreement filed concurrently herewith.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Tina Wolfson, the Class Action Settlement Agreement with Exhibits, all papers filed in support thereof, and such evidence and argument as the Court may consider.

Dated: September 22, 2023

Respectfully submitted,

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax: (949) 720-1292

drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Hassan A. Zavareei (SBN 181547)
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-9000; Fax (202) 973-9050
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ............................................................................................1

II.  BACKGROUND .............................................................................................2

    A.  The Litigation and Plaintiffs' Efforts on Behalf of the Class ...........................2

    B.  Plaintiffs' Settlement Efforts ..................................................................5

III. TERMS OF THE SETTLEMENT .................................................................6

    A.  The Settlement Class ...........................................................................6

    B.  Equitable Relief for the Settlement Class ................................................7

    C.  The Releases ....................................................................................10

    D.  Proposed Attorneys' Fees and Expenses and Representative Plaintiffs'
        Service Awards .................................................................................10

IV. ARGUMENT ...............................................................................................11

    A.  The Legal Standards for Preliminary Approval ........................................11

    B.  The Settlement Merits Preliminary Approval ...........................................13

        1.  The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and
            Likely Duration of Future Litigation ...............................................13

        2.  The Risk of Maintaining Class Action Status Through Trial .....................14

        3.  The Relief Offered in the Settlement Weighs in Favor of Approval.............14

        4.  The Extent of Discovery Completed and the Stage of Proceedings..............16

        5.  The Experience and Views of Counsel.............................................17

        6.  The Presence of a Governmental Participant .....................................17

        7.  The Settlement is the Product of Informed Arm's-Length Negotiations ......17

    C.  Provisional Certification of the Settlement Class is Appropriate ....................19

        1.  The Criteria for Class Certification Under Rule 23(a) Are Satisfied ...........20

            a.  Joinder of All Class Members is Impracticable .......................20

            b.  Common Issues of Law and Fact Exist, and Representative Plaintiffs'
               Claims Are Typical of Class Claims....................................20

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

c.  Representative Plaintiffs' and Their Counsel Adequately Represent

Class Members .........................................................................................21

2.  Class Certification is Appropriate Under Rule 23(b)(2) ................................21

D.  Notice Is Not Required ........................................................................................22

V.  CONCLUSION.................................................................................................................24

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Facebook, Inc.*,
   No. 18-cv-5982, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ................................15

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022).....................................................................................12

*Campbell v. Facebook Inc.*,
   No. 13-cv-5996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ..........................15, 17

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)......................................................................................12

*Collins v. Cargill Meat Sols. Corp.*,
   274 F.R.D. 294 (E.D. Cal. 2011) ...............................................................................20

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .....................................................................................................13

*Coopers v. Lybrand & Livesay*,
   437 U.S. 463 (1978) ...................................................................................................14

*Diaz v. Google LLC*,
   No. 21-cv-3080 (N.D. Cal. June 30, 2022) ................................................................15

*DL v. District of Columbia*,
   Case No. 05-cv-1437, 2013 WL 6913117 (D.D.C. Nov. 8, 2013) .............................23

*Green v. Am. Express Co.*,
   200 F.R.D. 211 (S.D.N.Y. 2001) ...............................................................................23

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998)........................................................................19, 20, 21

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019) .......................................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011).......................................................12, 17, 18, 19

- iii -

*In re Colgate Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales*
   *Practices Litig.*,
   No. 12-md-2320, 2015 WL 7282543 (D.N.H. Nov. 16, 2015)....................................15

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019)......................................................................................11

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016)............................................10

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015)......................................................................................12

*Jermyn v. Best Buy Stores*,
   2012 WL 2505644 (S.D.N.Y. June 27, 2012)..............................................................23

*Kim v. Space Pencil, Inc.*,
   No. 11-cv-3796, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ..................................15

*Lilly v. Jamba Juice Co.*,
   No. 13-cv-2998, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)............................23, 24

*Linquist v. Bowen*,
   633 F. Supp. 846 (W.D. Mo. Jan 31, 1986) ...............................................................23

*Mamula v. Satralloy, Inc.*,
   578 F. Supp. 563 (S.D. Ohio Sep. 7, 1983).................................................................23

*McDonald, et al. v. Kiloo A/S, et al.*,
   No. 17-cv-4344, 2020 WL 5702113 (N.D. Cal. Sept. 24, 2020) ..................................15

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir. 2010)......................................................................................11

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
   No. 17-cv-2911, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ...............................17, 18

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................15

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)................................................................................11, 12

- iv -

*Pederson v. Airport Terminal Servs.*,
No. 15-cv-2400, 2018 WL 2138457 (C.D. Cal. April 5, 2018) ....................................19

*Penland v. Warren Cty. Jail*,
797 F.2d 332 (6th Cir. 1986)..................................................................................23

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)...........................................................................14, 17

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)..................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ....................................................................................19, 23

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998)...............................................................................22

*Wannemacher v. Carrington Mortg.*,
No. 12-cv-2016, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) .............................18

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715...........................................................17, 24

**Other Authorities**

Conte & Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)..........................11

Federal Judicial Center, Manual for Complex Litigation §§ 21.632 (4th ed. 2004) .......11

Newberg on Class Actions § 13:15 (5th ed. 2014).........................................................16

**Rules**

Fed. R. Civ. P. 23..........................................................................................12, 14, 23

Fed. R. Civ. P. 23(a) ....................................................................................2, 19, 24

Fed. R. Civ. P. 23(a)(2) ...........................................................................................20

Fed. R. Civ. P. 23(a)(4) ...........................................................................................21

Fed. R. Civ. P. 23(b) ................................................................................................19

Fed. R. Civ. P. 23(b)(1) ......................................................................................22, 23

Fed. R. Civ. P. 23(b)(2) ......................................................................................... *passim*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Fed. R. Civ. P. 23(b)(3) .........................................................................................17, 22

Fed. R. Civ. P. 23(c)(2) .........................................................................................22, 23

Fed. R. Civ. P. 23(e) .............................................................................................12, 19

Fed. R. Civ. P. 23(e)(1) ..............................................................................................2

Fed. R. Civ. P. 23(e)(2) ...............................................................................................12

Fed. R. Civ. P. 23(h) ...................................................................................................11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This class action was on the verge of defeat after the Court's order compelling arbitration of the claims of all Ring purchasers—the vast majority of Plaintiffs and the proposed class—leaving only the claims of non-purchasers in the litigation. Nevertheless, after continuing to fight on behalf of the class, Plaintiffs achieved a Settlement for injunctive relief and now ask the Court to preliminarily approve it pursuant to Federal Rule of Civil Procedure 23(b)(2). The Settlement restores the autonomy of present and future Ring customers to make informed decisions about Ring's sharing of their private data with third parties, without releasing any claims for damages they may wish to pursue on their own, and stems the tide of unbridled corporate surveillance.

If approved, the Settlement will impose long-lasting, enforceable mandates on Defendant Ring LLC ("Defendant" or "Ring") to provide all existing and future Ring subscribers with adequate disclosures of Ring's third-party data sharing practices, as well as the opportunity to opt out of such sharing while still utilizing Ring's products and services. This relief provides consumers with the opportunity to meaningfully evaluate and control the use of their Personal Information.[1]

The Settlement comes after nearly two years of hard-fought litigation and then two additional years of contentious, well-informed, arm's-length negotiations and mediation facilitated by the Honorable Jay C. Gandhi (Ret.), with extensive further negotiations between experienced counsel. It arrives at a critical juncture in the litigation, after extensive motion practice and discovery but before the remaining Plaintiffs and Class Members still before this Court must face the risks of class certification and summary judgment proceedings, and while the other named Plaintiffs face the risks of individual arbitration of their claims. Prior to settlement, even the Non-Purchaser Plaintiffs who remain in court faced the risk of Ring's pending appeal of the portion of the Court's order

---

[1] Unless otherwise defined, capitalized terms herein have the meaning set forth in the Class Action Settlement Agreement ("SA" or "Settlement"), filed concurrently herewith.

that denied compelling their claims to arbitration, as well as the myriad litigation risks discussed below.

For all these reasons and those set forth in more detail below, Plaintiffs submit that the settlement is fair, reasonable, and adequate and respectfully request that the Court grant preliminary approval to the Settlement; issue the proposed Preliminary Approval Order; find, solely for purposes of effectuating the proposed Settlement, and pursuant to Rule 23(e)(1), that the prerequisites for class certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure are likely to be found satisfied; and set a hearing for final approval.

## II.    **BACKGROUND**

Plaintiffs zealously litigated this case through co-lead counsel Tina Wolfson, Hassan Zavareei, and Daniel Robinson (together, "Plaintiffs' Counsel" or "Co-Lead Counsel"), by: (i) conducting a wide-ranging investigation into the Settlement Class's claims; (ii) filing two comprehensive consolidated complaints in this action (not including the earlier complaints filed in certain Plaintiffs' initial actions preceding consolidation); (iii) successfully opposing Defendant's motion to dismiss as to certain Plaintiffs and as to key theories of liability; (iv) engaging in significant discovery; (v) consulting with experts; (vi) preparing for class certification briefing; (vii) initiating multiple separate arbitration proceedings; and (viii) engaging in mediation with Defendant overseen by the Honorable Jay C. Gandhi (Ret.), including the exchange of significant information in connection with such mediation, and many other tasks. As a result, Plaintiffs and Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

### A.    <u>The Litigation and Plaintiffs' Efforts on Behalf of the Class</u>

Between December 2019 and February 2020, four class action complaints were filed against Ring alleging various state and federal claims for misrepresentations and violations of Ring customers' security and privacy. In addition to claims arising from hacking incidents involving unauthorized access to users' home Ring camera systems,

Plaintiffs alleged that Ring surreptitiously collected and shared the sensitive Personal Information of its customers—including device and location tracking data—with numerous third parties such as Facebook without sufficient notice or consent.

On February 11, 2020, this Court issued an order consolidating the actions, and on November 13, 2020, appointed Tina Wolfson of Ahdoot & Wolfson, PC, Hassan A. Zavareei of Tycko & Zavareei LLP, and Daniel S. Robinson of Robinson Calcagnie, Inc. as Interim Co-Lead Counsel after reviewing competing applications. Dkts. 19, 64.

On December 17, 2020, after thoroughly vetting all potential named plaintiffs represented by all counsel who had filed the original actions, Co-Lead Counsel filed a consolidated amended class action complaint ("CAC"), which included 41 named plaintiffs from across the United States. Dkt. 69. On February 5, 2021, Ring filed a motion to compel Plaintiffs to arbitrate their claims on an individual basis and to stay the litigation, which Plaintiffs opposed.[2] Dkts. 82, 89.

Plaintiffs successfully opposed Ring's motion to stay discovery pending Ring's motion to compel arbitration. Dkts. 75, 80. The Parties exchanged initial disclosures and later extensively negotiated a protective order and ESI protocol. Dkts. 108-10.

On June 24, 2021, the Court granted in part Ring's motion to compel arbitration because it determined the arbitration agreement delegated the issue of arbitrability to an arbitrator for all Plaintiffs except the "Non-Purchaser Plaintiffs":

> The Purchaser Plaintiffs who made a Ring account using the Ring App or Website were on inquiry notice of Ring's Terms of Service. Therefore, the arbitration clause with respect to these Plaintiffs is enforceable. Because the Terms contained a delegation provision, the Court does not address Plaintiffs' arguments that the arbitration clause is unconscionable or otherwise unenforceable. However, the Non-Purchaser Plaintiffs are not bound by the agreement. They are not "Authorized Users" under the Terms of Service and their guardians' assent to the Terms' arbitration clause does

---

[2] For the purposes of the Motion, the parties distinguished between those Plaintiffs who purchased the Ring devices themselves (the "Purchaser Plaintiffs"), and those who were allegedly harmed by Ring devices but did not personally purchase them (the "Non-Purchaser Plaintiffs"). Dkts. 83, 89.

not bind them.

Dkt. 113 ("Arb. Order").

Plaintiffs also opposed another stay motion by Ring pending its appeal of the arbitration order. Dkts. 125, 139.

On August 23, 2021, Plaintiffs filed the operative Second Amended Class Action Complaint ("SAC"), which acknowledged the stay of all Purchaser Plaintiffs' claims, while reasserting allegations of the Non-Purchaser Plaintiffs, comprised of minor children and an elderly woman in her daughter's care and advanced claims for negligence, violation of the UCL, breach of implied contract, unjust enrichment, invasion of privacy under the California Constitution and common law, violation of the CLRA, and breach of the implied warranty of merchantability. Dkt. 132. The Purchasing Plaintiffs each filed separate arbitration claims in order to preserve and advance their claims.

Plaintiffs allege that Ring promised users that it takes cybersecurity and privacy seriously and will safeguard users' private information. SAC ¶¶ 2, 379-80. Plaintiffs further allege that, to the contrary, Ring actively shared users' sensitive PII and other private information with third parties without first obtaining the customer's informed consent. *Id.* ¶¶ 327-46.

Plaintiffs opposed Ring's motion to dismiss the SAC, which was set for hearing prior to the Court's continuances pending the Parties' settlement discussions. Dkts. 149, 154-55, 160, 165-66.

On May 20, 2021, Plaintiffs served their first set of requests for production of documents. After Ring served its initial objections and responses, the Parties engaged in extensive conferral regarding Plaintiffs' requests for production that resulted in Ring supplementing its initial responses on July 6, 2021. *See* concurrently filed Declaration of Tina Wolfson in Support of Preliminary Approval of Class Action Settlement ("Wolfson Decl.") ¶ 15.

The Parties ultimately reached an impasse and brought a dispute to this Court regarding several requests for production propounded by Plaintiffs. *Id.* On December 15,

- 4 -

2021, the Court held an informal discovery hearing regarding the dispute and ordered the Parties to submit additional letter briefing. Dkt. 147. This briefing was continued and then stayed pending the Parties' settlement in principle. Dkts. 154, 160, 166, 185.

The parties also conferred extensively regarding Plaintiffs' proposed Rule 30(b)(6) deposition topics. Plaintiffs also sought third party discovery related to Ring's security vulnerabilities. Wolfson Decl. ¶ 17. Both of these areas of discovery were heavily contested between the Parties and likely to result in discovery motion practice had the Settlement not been achieved. *Id.*

Plaintiffs also spent considerable time and resources consulting with prospective experts on both the alleged hacking and data sharing aspects of the litigation, as well as potential damages models. *Id.* ¶ 18. The Parties also exchanged numerous additional documents and information in connection with mediation and settlement discussions. *Id.* Plaintiffs had sufficient information to evaluate the claims and negotiate a fair settlement. *Id.*

**B.** **Plaintiffs' Settlement Efforts**

After being compelled to arbitration, each of the Purchaser Plaintiffs submitted arbitration demands against Ring. *Id.* ¶ 19. Those arbitration proceedings were all brought and managed by co-lead counsel. *Id.* Cognizant of the distinct claims of the alleged hacking victims versus those consumers who did not experience hacking ("PII-Only Plaintiffs"), and on the advice of ethics counsel hired by co-lead counsel, co-lead counsel separated the negotiations. *Id.* Ms. Wolfson and her firm negotiated with Ring to address Ring's allegedly unlawful information sharing practices on behalf of the entire class, while Mr. Zavareei and Mr. Robinson negotiated individual settlements for the hacking victims. *Id.* ¶ 20.

In her independent role, Ms. Wolfson began exploring resolution of the PII privacy claims at arm's length, while continuing individual arbitration efforts on behalf of the PII-Only Plaintiffs. *Id.* ¶ 21. On behalf of the PII-Only Plaintiffs, Ms. Wolfson and her team submitted a mediation brief, attended three separate formal mediation sessions (on

October 25, 2021, June 2, 2022, and January 13, 2023) with Judge Gandhi, and engaged in numerous follow-up mediation efforts both directly with Ring's counsel as well as through Judge Gandhi. *Id.* The Parties reached a settlement in principle in November 2022, over a year after their initial mediation. Wolfson Decl. ¶ 22. To say their negotiations were hard fought would be an understatement, as the Parties went back and forth repeatedly on (1) the nature of the Personal Information from Plaintiffs and Class Members that Ring had and was still sharing with third parties, as well as the methods of collection, (2) the method and content of disclosures to better put Plaintiffs, Class Members, and future Ring customers on notice of those sharing practices, and (3) whether and how to implement a means to opt out of those practices while still utilizing Ring's products and services. *Id.* ¶ 23.

Even after reaching an agreement in principle for class resolution, the Parties' settlement negotiations remained hard fought and extensive. *Id.* ¶ 24. Plaintiffs' negotiation with Ring of a long-form settlement agreement took many more months, with multiple disagreements that again required Judge Gandhi's involvement and guidance at times. *Id.* Ms. Wolfson and her firm consulted extensively with experts throughout these negotiations to explore and confirm the most effective means to curtail the alleged data sharing practices and inform consumers through disclosures and policy changes. *Id.* ¶ 25. Ultimately, the Parties achieved the instant Settlement when it was fully executed last month, almost two years after their initial mediation session. *Id.* ¶ 26.

### III.      <u>TERMS OF THE SETTLEMENT</u>

#### A.    <u>The Settlement Class</u>

For settlement purposes only, the Parties have agreed to the certification of an injunctive relief only class pursuant to Fed. R. Civ. P 23(b)(2) defined as follows:

> [A]ll persons who purchased a Ring security device of any kind from Ring LLC and/or created a Ring account during the Class Period. Excluded from the Settlement Class are Defendant and Defendant's officers, agents, and employees. Also excluded from the Settlement Class are Plaintiffs' Counsel, any judicial officer presiding over the Action and members of their immediate family, members of their judicial staff, and any judge sitting in the presiding

- 6 -

court system who may hear an appeal of any judgment entered (the "Settlement Class").

SA ¶ 23. This definition is consistent with the SAC's primary class definition. SAC ¶¶ 422, 425.

## B. Equitable Relief for the Settlement Class

The negotiated equitable relief under the Settlement is thorough. This relief is designed to provide Class Members—as well as any other members of the public who use Ring's products and services in the future—the opportunity to meaningfully evaluate the option to opt out of Ring sharing their Personal Information and to make informed choices as to those practices.

As alleged in Plaintiffs' SAC, an independent investigation found that Ring's mobile app integrated numerous third-party data trackers, including one operated by Facebook. *Id.* ¶ 328. The data that was allegedly shared included Ring customers' names, IP addresses, and—importantly—persistent identifiers and device tracking data that companies utilize to create and maintain advertising profiles on consumers. *Id.* ¶¶ 329-35, 338. Plaintiffs further alleged that, while Ring could remove these personal identifiers from the data it shared with third parties, it did not, nor did it provide adequate notification or obtain adequate consent for such practices from the customers whose data it was sharing. *Id.* ¶¶ 336-37.

The terms of the Settlement directly address these allegations by requiring Ring to update its user interface to prominently notify all existing and future Ring customers of these third-party data sharing practices, while simultaneously providing them with an easy method to opt-out of these practices. Importantly, consumers maintain the ability to use Ring's products and services after opting out. Ring's data sharing notifications not only appear in its terms of service, but as conspicuous notices in both new and existing users' account Control Center, alongside a conspicuous opt-out option. *See* SA Exs. C-D. Prior to this Settlement, Plaintiffs alleged that Ring did not provide any such clear or conspicuous disclosures or opt-out rights to its users, and Ring even *removed* information and links to opt out of third party data sharing on its website privacy policy, with nebulous

official statements as to when opting out was "applicable." SAC ¶¶ 372-75.

The specific Settlement terms are as follows:

As of the Stipulation Effective Date, and in part as a result of this litigation, Ring confirms that the Control Center and Cookie Preferences Manager offer Ring customers the option to opt out of Ring sharing their Personal Information for the purposes of third-party web and app analytics as well as personalized advertising by third parties. *See* SA § III.B.

Ring shall continue to offer Ring's United States customers the option to opt out of Ring sharing their Personal Information with the third-party service providers identified in paragraphs 326 through 335 of the SAC, for purposes of third-party web and app analytics as well as personalized advertising by third parties, for a period of (3) three years from the Effective Date. SA § III.B.

Ring shall display the following, additional language in its United States Terms of Service within 30 days of the Effective Date for a period of three (3) years from the date it is posted, provided however that Ring may update this disclosure to ensure accuracy:

- We use third-party web and app analytics services on our websites and mobile apps. The service providers use automated technologies to collect and analyze information, including personal information (such as email, device identifier, and IP addresses) to understand how you use our websites and mobile apps. Web and app analytics services help us improve features, evaluate the effectiveness of our marketing, and, ultimately, optimize the customer experience. To learn more about these analytics services, please see our Cookie Policy.

- If you have a Ring account, you can opt out of Ring sharing your personal information with third parties for third-party web and app analytics and personalized advertising by third parties. Please visit the Control Center and/or Cookie Preferences Manager to set your preferences.

*See* SA § III.B.

Ring shall display the following, additional frequently asked question on Ring's United States website Privacy page within thirty (30) days of the Effective Date. Ring shall display this additional language for a period of three (3) years from the date it is posted, provided however that Ring may update this disclosure to ensure accuracy:

- **Does Ring use third-party web and app analytics services on its website and mobile apps?** We use third-party web and app analytics services on our websites and mobile apps. The service providers use automated technologies to collect and analyze information, including personal information (such as email, device identifier, and IP addresses) to understand how you use our websites and mobile apps. Web and app analytics services help us improve features, evaluate the effectiveness of our marketing, and, ultimately, optimize the customer experience. To learn more about these analytics services, please see our Cookie Policy.

- If you have a Ring account, you can opt out of Ring sharing your personal information with third parties for third-party web and app analytics and personalized advertising by third parties. Please visit the Control Center and/or Cookie Preferences Manager to set your preferences.

*See* SA § III.B.

Within thirty (30) days of the Effective Date, Ring shall update its United States Control Center language under "Third Party Service Providers" to contain the following language or language that is similar: "You can opt out of Ring sharing your personal information with third parties for third-party web and app analytics and personalized advertising by third parties." Ring shall display this language for a period of three (3) years from the date it is posted, provided however that Ring may update this disclosure to ensure accuracy.

Within thirty (30) days of the Effective Date, Ring shall send a notice to all existing Ring accountholders in the United States that informs them of Ring's Privacy Notice and the opt out option, and provides a conspicuous hyperlink to the opt out option. *See* SA § III.B and Ex. C. Ring will send the notice by e-mail.

For a period of three (3) years after the Effective Date, Ring shall send an email to all persons who create a new Ring account in the United States, after account registration is completed, that informs them of Ring's Privacy Notice and the opt out option and provides a conspicuous hyperlink to the opt out option ("New Account Email"). Ring shall begin sending New Account Emails within thirty (30) days of the Effective Date by e-mail. *See* SA§ III.B and Ex. D. Ring may update the New Account Email as appropriate, including to ensure accuracy, and update the notification method (e.g., by text, in-app notification, or other equivalent notice to the accountholder). SA § III.B.

### C. The Releases

The Settlement only releases claims for non-monetary relief, such as injunctive relief or other similar equitable relief on behalf of the Settlement Class. *See* SA ¶ 20 ("Released Settlement Class Claims"); and § III.K (Settlement Class Members' Releases). It does not release any claims on behalf of the Settlement Class for monetary damages. *Id.* ¶ 20 ("For avoidance of doubt, if a claim or cause of action seeks both monetary and equitable relief, only the equitable relief portion of the claim is being released by this Settlement."). The named Plaintiffs, on the other hand, are releasing their claims for injunctive relief and monetary damages. *Id.* ¶ 19 ("Released Individual Claims" include "any and all claims, demands, rights, actions, suits, damages, costs, fees, accounts, debts, liens, injunctive relief, restitution, and causes of action of whatever kind, nature, or description whatsoever, in law or in equity.").

### D. Proposed Attorneys' Fees and Expenses and Representative Plaintiffs' Service Awards

As part of the Settlement, Plaintiffs and their counsel will petition the Court for attorneys' fees, costs, and expenses, and a representative plaintiff service award for each named Plaintiff. SA § III.I. Plaintiffs and their counsel agree that any requested attorneys' fees, costs, expenses, and service awards, combined, will not exceed $500,000, and Defendant agrees not to oppose such a request. *Id.* Defendant has agreed to pay any amount awarded by the Court (up to a maximum of $500,000 for attorneys' fees and expenses, and service awards, combined).

The Parties negotiated attorneys' fees and expenses and representative plaintiff service awards only after agreement was reached on all material terms of the Settlement. SA § III.I.; Wolfson Decl. ¶ 27; *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 445 (3d Cir. 2016), *as amended* (May 2, 2016) (deferring discussion of fees until after material settlement terms are agreed upon is a practice routinely approved by courts). The fee is a significant negative multiplier of the collective lodestar to achieve this result, and the Settlement is not contingent on any fee approval.

The Proposed Preliminary Approval Order provides that Plaintiffs' Counsel will file a motion for payment of attorneys' fees and expenses prior to the Final Approval Hearing and prior to the Objection Deadline. Class Members will have the opportunity to comment on or object to the fee petition under Rule 23(h), consistent with Ninth Circuit authority. *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

## IV.   ARGUMENT

### A.   The Legal Standards for Preliminary Approval

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Conte & Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.").

The typical process for approving class action settlements is described in the Federal Judicial Center, Manual for Complex Litigation §§ 21.632-35 (4th ed. 2004): (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a "formal fairness hearing," or final approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Id.* This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of class members' interests. As here, where a settlement only provides for injunctive relief under Rule 23(b)(2) and class members are not releasing their monetary claims, notice to class members is not required. *See infra*

Section IV.D.

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004))."[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). "The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625.

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 776 (9th Cir. 2022) ("settlement prior to class certification requires extra scrutiny"). The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth,* 654 F.3d at 946-47. However, courts have declined to employ a heightened scrutiny analysis when a settlement provides for injunctive relief only to Class Members and they are not releasing their claims for monetary relief. *See infra* Section IV.B.7.

**B. The Settlement Merits Preliminary Approval**

**1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation**

The Settlement is fair, reasonable, and adequate, particularly when viewed in light of the significant risks of continued litigation in this case—risks that might defeat any recovery at all.

Here, the Class faced the very real possibility that Ring's arbitration agreement and class action waiver would be found valid and enforceable, at the very least as to all Purchaser Class Members. Had the case continued, Ring's arbitration policy and class action waiver likely would have prevented Settlement Class Members from proceeding in court, or as a class action, effectively eliminating the possibility of any comparable result. This class action ceased to exist for most class members when the Court compelled the Purchaser Plaintiffs to individual arbitration. Additionally, Ring appealed the portion of this Court's order that denied its motion compelling arbitration of the Non-Purchaser Plaintiffs' claims, which, if successful, could have resulted in risky individual arbitration as the only recourse for all Plaintiffs' and Class Members' claims against Ring.

The Settlement is an excellent result given this arbitration posture, as it requires Ring to fix the practices that Plaintiffs alleged were unlawful to the benefit of all Class Members. At the same time, because there is no release of claims for monetary relief, Class Members are in the same posture as they were before with respect to those claims, free to pursue them in arbitration or in court.

Even absent the likelihood of compelled individual arbitration, Plaintiffs' hurdles in this case would still be considerable. In order to achieve class certification, extensive and expensive expert analysis would be required, and ultimately Plaintiffs would have to prove that their damages can be quantified using accepted principles of economics that are uniform to the entire Class. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013).

Although Plaintiffs firmly believe their liability case is strong and that class

- 13 -

certification is warranted, it is uncertain whether the Court ultimately would grant certification, deny a motion for summary judgment filed by Ring, or ever find that a damages class can be certified. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing for Class Members because the amount of damages are uncertain.

### 2. The Risk of Maintaining Class Action Status Through Trial

As pointed out above, certification would have been hotly disputed and the outcome uncertain. A district court's order granting class certification under Rule 23 is "inherently tentative" and is "subject to revision," so Ring would have been able to move for de-certification at any time before trial. *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978).

A denial or reversal of class certification, like a loss on the merits, would effectively extinguish any hope of recovery by the Settlement Class. Even if Plaintiffs were to win class certification, there would remain a risk of losing on summary judgment or at a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Class, possibly for years. By contrast, the Settlement provides for real and immediate change in Ring's practices that fixes the allegedly unlawful conduct.

### 3. The Relief Offered in the Settlement Weighs in Favor of Approval

There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 965 (internal quotation marks and citation omitted). Factors considered include "the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval

- 14 -

are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotation marks and citation omitted).

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief. *See, e.g.*, *Adkins v. Facebook, Inc*., No. 18-cv-5982, 2020 WL 6710086, at *2-3 (N.D. Cal. Nov. 15, 2020) (preliminarily approving data breach settlement providing only injunctive relief); *Campbell v. Facebook Inc.*, No. 13-cv-5996, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *Diaz v. Google LLC*, No. 21-cv-3080, Dkt. 71 (N.D. Cal. June 30, 2022) (granting preliminary approval of non-monetary settlement of claims that Google exposed PHI and PII through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.*, No. 17-cv-4344, 2020 WL 5702113, at *6 (N.D. Cal. Sept. 24, 2020) (granting preliminary approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children; final approval granted April 12, 2021).

Other courts have granted final approval of settlements in which defendants have agreed to change business practices to comply with the law without monetary relief to the class. *See, e.g.*, *In re Colgate Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320, 2015 WL 7282543 at *2, *10-13 (D.N.H. Nov. 16, 2015) (granting final approval of settlement that required the defendant to cease using allegedly misleading marketing statements, without releasing class members' monetary claims, because "[t]he proposed settlement provides a benefit equal to, or greater than, what class members would likely achieve through continued litigation"); *Kim v. Space Pencil, Inc.*, No. 11-cv-3796, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012) (court approved a settlement which stop[ped] the allegedly unlawful practices, bar[red] Defendant from similar practices in the future, and d[id] not prevent the class members

from seeking legal recourse.").

While the Settlement does not include monetary relief, it provides meaningful equitable relief designed to address Ring's alleged data sharing practices (*see supra* Section III.B), and does not prevent Class Members from seeking legal recourse for the same alleged conduct.

The Settlement has no "obvious substantive defects such as . . . overly broad releases of liability." Newberg on Class Actions § 13:15, at 326 (5th ed. 2014). As noted, this is a Rule 23(b)(2) settlement providing for equitable relief only, under which the Settlement Class will only be releasing claims for non-monetary relief. *See* SA ¶ 20 ("Released Settlement Class Claims"); and § III.K (Settlement Class Members' Releases). It does not release any claims on behalf of the Settlement Class for monetary damages. *Id.* ¶ 20 ("For avoidance of doubt, if a claim or cause of action seeks both monetary and equitable relief, only the equitable relief portion of the claim is being released by this Settlement."). Settlement Class Members are free to pursue monetary remedies against Ring arising from the same conduct alleged here.

Only the named Plaintiffs will be releasing claims for monetary damages. *See* SA ¶ 19 (Released Individual Claims). The Released Settlement Class Claims (SA ¶ 20) are therefore limited in nature and tailored exactly to the type of relief obtained for the Settlement Class (i.e., equitable relief).

### 4. The Extent of Discovery Completed and the Stage of Proceedings

By the time the Parties reached the Settlement, they had engaged in significant pre-trial motion practice, conducted extensive discovery, and also spent considerable time and resources consulting with experts. Wolfson Decl. ¶¶ 5, 10-18, 25.

This work gave Plaintiffs' Counsel sufficient knowledge to understand the strength and weaknesses of Plaintiffs' claims, and negotiate a Settlement that is more than fair. *See supra* Section II.A; Wolfson Decl. ¶¶ 5-6, 33-34. Plaintiffs' Counsel fully endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Class. Wolfson Decl. ¶¶ 6, 34.

### 5. The Experience and Views of Counsel

Plaintiffs are represented by attorneys who were previously appointed by the Court to represent the interests of the Class. *See* Dkts. 19, 64. Plaintiffs' Counsel have extensive experience and expertise in prosecuting complex class actions, including consumer protection and privacy class actions. Wolfson Decl. ¶ 3. Plaintiffs' Counsel were informed of the facts, claims, and defenses in this action, as well as the risks of proceeding to trial, and endorse the Settlement without reservation. Wolfson Decl. ¶¶ 5-6, 33-34; *see, Rodriguez,* 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]").

### 6. The Presence of a Governmental Participant

No governmental agency is involved in this litigation, but the Attorneys General of the United States and of each State will be notified of the proposed Settlement in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), and will have an opportunity to raise any concerns. *See* SA § III.F.

### 7. The Settlement is the Product of Informed Arm's-Length Negotiations

Courts typically scrutinize the negotiated settlement "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quoting *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011)). Where, as here, the settlement is for injunctive relief purposes only and class members do not release any monetary claims, the heightened scrutiny of a collusion analysis is inapplicable. *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* No. 17-cv-2911, 2019 WL 343472, at *3 n.2 (N.D. Cal. Jan. 28, 2019); *see also Campbell*, 2017 WL 3581179, at *5 ("Arguably, [the] *Bluetooth* [collusion analysis] is not even applicable to this settlement because it does not involve a Rule 23(b)(3) damages class" because "there is no common fund, 'constructive' or otherwise: the certified class is injunctive-relief-only, and monetary

damages claims are not at issue").

To the extent scrutiny is applied to this Settlement, the Court can be confident of the arm's-length nature of the negotiation process. Here, such an evaluation demonstrates not only that the *Bluetooth* factors are inapplicable to the instant Settlement, but that Plaintiffs' counsel have not "allowed pursuit of their own self-interests and that of class members to infect the negotiations." *Bluetooth*, 647 F.3d at 947 (evaluating factors of collusion, including whether counsel would receive a disproportionate distribution of the settlement, whether the settlement includes a "clear sailing" arrangement, and whether the settlement permits a reversion of class funds back to the defendant).

Although this Settlement includes a clear sailing provision, such provisions are "not prohibited" (*Bluetooth* 647 F.3d at 949) and the clear sailing provision here readily withstands "great[] scrutiny" (*id.*) because (1) the Parties did not discuss or negotiate attorney fees, expenses, or Plaintiff service awards until reaching an agreement in principle on Class resolution; (2) because this is solely an injunctive relief settlement, there is no settlement fund from which unawarded money will revert to Defendant, and the Settlement Class is not releasing monetary claims; (3) any Court-approved fee award will not reduce any Settlement Class benefits; (4) the proposed fee award represents a significant negative multiplier to Plaintiffs' counsel's lodestar; and (5) the Settlement is not conditioned on the approval of Plaintiffs' attorney fee request. Wolfson Decl. ¶ 27.

This litigation was hard-fought, and the Settlement only was reached after extensive, arm's length negotiations that spanned nearly two years and followed extensive discovery, motion practice, and formal mediations. *See Wannemacher v. Carrington Mortg.*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant . . . discovery [was] conducted"; and before "exploring settlement, the parties litigated the case for a year"); *see also Moreno*, 2019 WL 343472, at *5 (that the parties engaged in substantial motion practice and thus have had an opportunity to evaluate the strength and weaknesses of the relative claims and defenses weighs in favor of settlement approval). The Settlement is the product of nearly

two years of arm's-length negotiations between experienced counsel overseen by Judge Gandhi, an experienced neutral mediator. *Bluetooth*, 654 F.3d at 948 (finding that engaging in formal mediation with an experienced mediator weighs "in favor of a finding of non-collusiveness"); *Pederson v. Airport Terminal Servs.*, No. 15-cv-2400, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected non-collusive negotiations).

In connection with the mediation, the Parties exchanged extensive briefing which educated both sides on the risks of continuing litigation. Wolfson Decl. ¶ 22. When negotiations began, Plaintiffs had a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *Id*. Despite not reaching agreement during three formal mediation sessions, the Parties continued their hard-fought negotiations for over a year after mediation until reaching a detailed settlement in principle for the instant injunctive relief. *Id*.

In the subsequent ten months leading up to the filing of this Motion, the Parties engaged in intense back-and-forth negotiations regarding every detail of the Settlement, and they did not finalize their Settlement Agreement until last month. *Id.* ¶¶ 23-26. There is no indication of collusion or fraud in the settlement negotiations, and none exists.

## C.   <u>Provisional Certification of the Settlement Class is Appropriate</u>

To grant preliminary approval of the settlement, the Court must also determine that it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e). The party seeking class certification bears the burden of showing that each of Rule 23(a)'s requirements and at least one of the requirements of Rule 23(b) are met. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Here, the Settlement Class meets the requirements of Rule 23(a) as well as the requirements to certify an injunctive class under Rule 23(b)(2).

**1. The Criteria for Class Certification Under Rule 23(a) Are Satisfied**

**a. Joinder of All Class Members is Impracticable**

Numerosity is satisfied where "joinder of all [class] members is impracticable." *Hanlon*, 150 F. 3d at 1019. Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011). Joinder of more than a million persons who purchased a Ring security device of any kind from Ring and/or created a Ring account within the Class Period is impractical, if not impossible. Wolfson Decl. ¶ 29. Numerosity is satisfied.

**b. Common Issues of Law and Fact Exist, and Representative Plaintiffs' Claims Are Typical of Class Claims**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality "has been construed permissively [where] ... [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Typicality refers to the nature of the class representatives' claims, not to the specific facts from which they arose or the particular relief sought. Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 1020.

Plaintiffs' claims are typical of, and common to the class. Plaintiffs contend that the Class claims all arise from a common course of conduct by Defendant towards each Class Member: Ring's allegedly improper sharing of its users' sensitive personal information with third parties without first obtaining users' authorization or consent. Because all of this focuses on Ring and what it did and did not do, the evidence about it is common to class members. Thus, Plaintiffs' claims arise out of the same alleged wrongful conduct and are premised on the same legal theory as the Class claims.

### c. Representative Plaintiffs' and Their Counsel Adequately Represent Class Members

Rule 23(a)(4) permits class certification if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' interests are aligned with the Class, as they do not have any conflicts of interest with the Class and their claims are coextensive with those of Class Members; the Settlement also does not afford them preferential treatment. Moreover, they have established their adequacy by securing experienced counsel to litigate their claims and secured the proposed Settlement, which, if approved, will convey a substantial benefit on the Class.

Plaintiffs have also been active participants in the litigation. Wolfson Decl. ¶ 32. They investigated the matter prior to and after retaining their respective attorneys, participated in the plaintiff vetting process implemented by Plaintiffs' counsel, reviewed, and approved their original complaints, participated in preparing initial disclosures, understood that they may have to sit for a deposition, kept in contact with counsel to monitor the progress of the litigation, and reviewed and communicated with their counsel regarding the Settlement Agreement. *Id.*

Plaintiffs' Counsel are well qualified and experienced in complex class action litigation and have an established track record in litigating cases involving consumer protection and consumer privacy. *Id.* ¶ 5. Further, this Court already determined that Plaintiffs' Counsel are suitable Interim Class Counsel. *See* Dkts. 19, 64.

### 2. Class Certification is Appropriate Under Rule 23(b)(2)

Under Rule 23(b)(2), a class action is properly certified where the party against whom relief is sought "has acted or refused to act on grounds that apply generally to the class, so that injunctive relief . . . is appropriate respecting the class as a whole." Fed. R.

Civ. P. 23(b)(2). Setting forth a minimal standard, for a Rule 23(b)(2) class to be certified, "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice[.]" *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Further, "[a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id.*

Plaintiffs complain of the same alleged business practices—i.e., the unauthorized use and dissemination of their Personal Information—that are generally applicable to the Settlement Class as a whole. Moreover, Ring's alleged actions generally apply to the Class as a whole. Importantly, the prospective injunctive relief provides a direct benefit sought through this litigation based on Ring's alleged third-party data sharing practices. This relief not only benefits Plaintiffs and Class Members, but any other member of the public who seeks to utilize Ring's products and services in the future.

The alleged privacy violations at the heart of this case—Ring's alleged surreptitious collection and sharing of Personal Information with numerous third party data app trackers without sufficient notice or consent—are remedied by the prospective relief proposed in this Settlement, such that all current and future Ring customers will be on adequate notice of Ring's data sharing practices and be empowered to choose whether to allow their data to be subject to those practices while utilizing Ring's products and services. Ring has agreed to change its disclosures and opt-out policy for all users, so that all existing and future customers now can make informed decisions about how Ring shares their data with other companies. Rule 23(b)(2) certification of the Settlement Class is appropriate.

**D.** **Notice Is Not Required**

Unlike a Rule 23(b)(3) class where notice is mandatory, Rule 23(c)(2) states that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2) (emphasis added). Because of this, "[c]ourts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind

class members" and there is no option for class members to opt out. *Lilly v. Jamba Juice Co.*, No. 13-cv-2998, 2015 WL 1248027, *8-9 (N.D. Cal. Mar. 18, 2015) (holding that because the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members, class notice is not necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558, 180 L. Ed. 2d 374 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

In fact, in injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required. *See, e.g., Jermyn v. Best Buy Stores*, 2012 WL 2505644, *12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release the class members' monetary claims, notice to the class members is not required"); *Green v. Am. Express Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (no notice is required under several circumstances, such as "when the settlement provides for only injunctive relief, and therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class"); *Penland v. Warren Cty. Jail*, 797 F.2d 332, 334 (6th Cir. 1986) ("this court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions"); *DL v. District of Columbia*, Case No. 05-cv-1437, 2013 WL 6913117 at *11 (D.D.C. Nov. 8, 2013) ("the district courts within these circuits that have directly considered the issue have applied the requirement 'more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief'"); *Linquist v. Bowen*, 633 F. Supp. 846, 862 (W.D. Mo. Jan 31, 1986) ("When a class is certified pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, notice to the class members is not required.") (internal citations omitted); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 572 (S.D. Ohio Sep. 7, 1983) ("This Court has certified this action as a class action under Rule 23(b)(2), and, as such, notice to class members is not required under Rule 23(c)(2)").

Here, the Settlement provides for equitable relief only and preserves the rights of Settlement Class Members to bring claims for monetary relief against Defendant. *See* SA § III.K. Further, even if notice was sent, Settlement Class Members would not have the right to opt out. *See Lilly*, 2015 WL 1248027, at *9.[3] Accordingly, notice is not required.

## V. <u>CONCLUSION</u>

For the reasons discussed herein, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, find that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Rules 23(a) and 23(b)(2) are likely to be found satisfied, and set a hearing for final approval.

Dated: September 22, 2023

Respectfully submitted,

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com


Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660

---

[3] Although notice to class members is not required, the Class Action Fairness Act ("CAFA") requires that notice be given to state and federal authorities. 28 U.S.C. § 1715. The CAFA provides that "no later than ten days after a proposed settlement of a class is filed in court, each defendant shall serve upon the appropriate state official of each state in which a class member resides a notice of the proposed settlement and specified supporting documentation." *Id.* at § 1715(b). The Settlement requires Ring to serve notice in compliance with CAFA 10 days after the filing of this Motion. *See* SA § III.F.

- 24 -

(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Hassan A. Zavareei (SBN 181547)
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL