Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Hassan A. Zavareei (SBN 181547)
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

*Interim Co-Lead Counsel for Plaintiffs
and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Ring LLC Privacy Litigation*<br><br>This Document Relates To:<br>All Actions. | Master File No.: 2:19-cv-10899 MWF (RAOx)<br><br>**DECLARATION OF TINA WOLFSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE: October 30, 2023<br>TIME: 10:00 a.m.<br>JUDGE: Hon. Michael W. Fitzgerald<br>CTRM: 5A |

# DECLARATION OF TINA WOLFSON

I, Tina Wolfson, declare as follows:

1. I am a partner and founding member of the law firm Ahdoot & Wolfson, PC ("AW"), a member in good standing of the State Bar of California, and admitted to practice before this Court. I was appointed by the Court to serve as Interim Co-Lead Class Counsel in these consolidated proceedings against Defendant Ring LLC ("Defendant" or "Ring").

2. I have personal knowledge of the matters set forth herein and could and would testify competently hereto if called upon to do so. I respectfully submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.[1]

3. In 1998, Robert Ahdoot and I co-founded AW, now a nationally recognized law firm that specializes in complex and class action litigation, with a focus on privacy rights, consumer fraud, anti-competitive business practices, employee rights, defective products, civil rights, and taxpayer rights. I have been prosecuting cutting edge privacy cases since the late 1990s, when AW successfully advocated for the privacy rights of millions of consumers against major financial institutions based on the unlawful compilation and sale of detailed personal financial data to third-party telemarketers without consumers' consent, in San Francisco Superior Court (Hon. Richard R. Kramer, Ret.). While such practices later became the subject of Gramm-Leach-Bliley Act regulation, they were novel and hidden from public scrutiny at the time we were prosecuting them. AW's work shed light on how corporations and institutions collect, store, and monetize mass data, leading to governmental regulation. We have been at the forefront of privacy-related litigation since then.

4. AW has played an integral role in the prosecution of this class action. AW has vigorously and zealously represented the interests of the proposed Settlement Class

---

[1] Unless otherwise defined, capitalized terms herein have the meaning set forth in the Class Action Settlement Agreement ("SA" or "Settlement"), filed concurrently herewith.

- 1 -

from the inception of this hard-fought litigation until the present.

5. At the time the Settlement was reached, Plaintiffs had a firm understanding of the risks and benefits of further litigation. AW, along with co-lead counsel, have: (i) conducted a wide-ranging investigation into the Settlement Class's claims; (ii) filed two comprehensive consolidated complaints in this action (not including the earlier complaints filed in certain Plaintiffs' initial actions preceding consolidation); (iii) successfully opposed Defendant's motion to dismiss as to certain Plaintiffs and as to key theories of liability; (iv) engaged in significant discovery; (v) consulted with experts; (vi) prepared for class certification briefing; (vii) engaged in mediation with Defendant overseen by the Honorable Jay C. Gandhi (Ret.), including the exchange of significant information in connection with such mediation, and many other tasks.

6. As explained herein, I believe the proposed Settlement to be fair, reasonable, and adequate, and in the best interests of the proposed Settlement Class.

## **BACKGROUND**

7. Between December 2019 and February 2020, four class action complaints were filed against Ring alleging various state and federal claims for misrepresentations and violations of Ring customers' security and privacy. In addition to claims arising from hacking incidents involving unauthorized access to users' home Ring camera systems, Plaintiffs alleged that Ring surreptitiously collected and shared the sensitive Personal Information of its customers—including device and location tracking data—with numerous third parties such as Facebook without sufficient notice or consent.

8. Following consolidation of the actions on February 11, 2020, the Court appointed Tina Wolfson of Ahdoot & Wolfson, PC, Hassan A. Zavareei of Tycko & Zavareei LLP, and Daniel S. Robinson of Robinson Calcagnie, Inc. as Interim Co-Lead Counsel. Dkts. 19, 64.

9. On December 17, 2020, after thoroughly vetting all potential named plaintiffs represented by all counsel who had filed the original actions, Co-Lead Counsel filed a consolidated amended class action complaint ("CAC"), which included 41 named

- 2 -

plaintiffs from across the United States. Dkt. 69. On February 5, 2021, Ring filed a motion to compel Plaintiffs to arbitrate their claims on an individual basis and to stay the litigation, which Plaintiffs opposed. Dkts. 82, 89.

10. Plaintiffs successfully opposed Ring's motion to stay discovery pending Ring's motion to compel arbitration. Dkts. 75, 80. The Parties exchanged initial disclosures and later extensively negotiated a protective order and ESI protocol. Dkts. 108-10.

11. On June 24, 2021, the Court granted in part Ring's motion to compel arbitration because it determined the arbitration agreement delegated the issue of arbitrability to an arbitrator for all Plaintiffs except the "Non-Purchaser Class." Dkt. 113 ("Arb. Order").

12. Plaintiffs also opposed another stay motion by Ring pending its appeal of the arbitration order. Dkts. 125, 139.

13. On August 23, 2021, Plaintiffs filed the operative Second Amended Class Action Complaint ("SAC"), which acknowledged the stay of all Purchase Plaintiffs' claims, while reasserting allegations of the Non-Purchaser Plaintiffs, comprised of minor children and an elderly woman in her daughter's care and advanced claims for negligence, violation of the UCL, breach of implied contract, unjust enrichment, invasion of privacy under the California Constitution and common law, violation of the CLRA, and breach of the implied warranty of merchantability. Dkt. 132.

14. Plaintiffs allege that Ring promised users that it takes cybersecurity and privacy seriously and will safeguard users' private information. SAC ¶¶ 2, 379-80. To the contrary, Ring actively shared users' sensitive PII and other private information with third parties without first obtaining the customer's informed consent. *Id.* ¶¶ 327-46. Plaintiffs opposed Ring's motion to dismiss the SAC, which was set for hearing prior to the Court's continuances pending the Parties' settlement discussions. Dkts. 149, 154-55, 160, 165-66.

- 3 -
DECLARATION OF TINA WOLFSON ISO MOTION FOR PRELIMINARY APPROVAL

15. On May 20, 2021, Plaintiffs served their first set of requests for production of documents. After Ring served its initial objections and responses, the Parties engaged in extensive conferral regarding Plaintiffs' requests for production that resulted in Ring supplementing its initial responses on July 6, 2021. The Parties ultimately reached an impasse and brought a dispute to this Court regarding several requests for production propounded by Plaintiffs.

16. On December 15, 2021, the Court held an informal discovery hearing regarding the dispute and ordered the Parties to submit additional letter briefing. Dkt. 147. This briefing was continued and then stayed pending the Parties' settlement in principle. Dkts. 154, 160, 166, 185.

17. The Parties conferred extensively regarding Plaintiffs' proposed Rule 30(b)(6) deposition topics. Plaintiffs also sought third party discovery related to Ring's security vulnerabilities. Both of these areas of discovery were heavily contested between the Parties and likely to result in discovery motion practice had the Settlement not been achieved.

18. Plaintiffs spent considerable time and resources consulting with prospective experts on both the hacking and data sharing aspects of the litigation, as well as potential damages models. The Parties also exchanged numerous additional documents and information in connection with mediation and settlement discussions. Plaintiffs had sufficient information to evaluate the claims and negotiate a fair settlement.

**SETTLEMENT NEGOTIATIONS AND MEDIATION**

19. After being compelled to arbitration, each of the Purchaser Plaintiffs submitted arbitration demands against Ring. Those arbitration proceedings were all brought and managed by co-lead counsel. Cognizant of the distinct claims of the hacking victims versus those consumers who did not experience hacking ("PII-Only Plaintiffs"), and on the advice of ethics counsel hired by co-lead counsel, co-lead counsel agreed to separate the negotiations.

20. AW negotiated with Ring to address Ring's allegedly unlawful information sharing practices on behalf of the entire class while Mr. Zavareei and Mr. Robinson negotiated individual settlements for the hacking victims.

21. I began exploring resolution of the PII privacy claims at arm's length, while continuing individual arbitration efforts on behalf of the PII-Only Plaintiffs. On behalf of the PII-Only Plaintiffs, AW submitted a mediation brief, attended three separate formal mediation sessions (on October 25, 2021, June 2, 2022, and January 13, 2023) with Judge Gandhi, and engaged in numerous follow-up mediation efforts both directly with Ring's counsel as well as through Judge Gandhi.

22. When negotiations began, Plaintiffs had a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. Despite not reaching agreement during three formal mediation sessions, the Parties continued their hard-fought negotiations for over a year after mediation until reaching a detailed settlement in principle for the instant injunctive relief. The Parties reached a settlement in principle in November 2022.

23. The Parties went back and forth repeatedly on (1) the nature of the Personal Information from Plaintiffs and Class Members that Ring had and was still sharing with third parties, as well as the methods of collection, (2) the method and content of disclosures to better put Plaintiffs, Class Members, and future Ring customers on notice of those sharing practices, and (3) whether and how to implement a means to opt out of those practices while still utilizing Ring's products and services.

24. Even after reaching an agreement in principle for class resolution, the Parties' settlement negotiations remained hard fought and extensive. Plaintiffs' negotiation with Ring of a long-form settlement agreement took many more months, with multiple disagreements that again required Judge Gandhi's involvement and guidance at times.

DECLARATION OF TINA WOLFSON ISO MOTION FOR PRELIMINARY APPROVAL

25. AW consulted extensively with experts throughout these negotiations to explore and confirm the most effective means to curtail the alleged data sharing practices and inform consumers through disclosures and policy changes.

26. Ultimately, the Parties achieved the instant Settlement when it was fully executed in August 2023, almost two years after their initial mediation session.

27. The Parties negotiated attorneys' fees and expenses and representative plaintiff service awards only after agreement was reached on all material terms of the Settlement. As part of the Settlement, Plaintiffs and their counsel will petition the Court for attorneys' fees, costs, and expenses, and a representative plaintiff service award for each named Plaintiff. SA § III.I. Defendant has agreed to pay any amount awarded by the Court (up to a maximum of $500,000 for attorneys' fees and expenses, and service awards, combined). The fee is a significant negative multiplier of the collective lodestar to achieve this result, and the Settlement is not contingent on any fee approval.

## **THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT**

28. The proposed Settlement Class is defined as: all persons who purchased a Ring security device of any kind from Ring LLC and/or created a Ring account during the Class Period. Excluded from the Settlement Class are Defendant and Defendant's officers, agents, and employees. Also excluded from the Settlement Class are Plaintiffs' Counsel, any judicial officer presiding over the Action and members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

29. Investigation revealed that the proposed Settlement Class consists of over one million individuals.[2]

30. If approved, the Settlement will impose long-lasting, enforceable mandates on Ring to provide all existing and future Ring subscribers with adequate disclosures of

---

[2] Amazon ring sales nearly tripled in December despite hacks, Vox, https://www.vox.com/recode/2020/1/21/21070402/amazon-ring-sales-jumpshot-data (last visited Sep 22, 2023).

Ring's third-party data sharing practices, as well as the opportunity to opt out of such sharing while still utilizing Ring's products and services.

31. In my opinion, the Settlement is an excellent outcome. The Settlement requires Ring to fix the practices that Plaintiffs alleged were unlawful to the benefit of all Class Members. At the same time, because there is no release of claims for monetary relief, Class Members are in the same posture as they were before with respect to those claims, free to pursue them in arbitration or in court.

32. Plaintiffs have been active participants in the litigation. They investigated the matter prior to and after retaining their respective attorneys, participated in the plaintiff vetting process implemented by Plaintiffs' counsel, reviewed, and approved their original complaints, participated in preparing initial disclosures, understood that they may have to sit for a deposition, kept in contact with counsel to monitor the progress of the litigation, and reviewed and communicated with their counsel regarding the Settlement Agreement.

33. The proposed Settlement is the product of nearly two years of hard-fought litigation and then two additional years of contentious, well-informed, arm's-length negotiations and mediation facilitated by the Honorable Jay C. Gandhi (Ret.), with extensive further negotiations between experienced counsel.

34. Based on my experience and my knowledge regarding the factual and legal issues in this matter, and given the substantial benefits provided by the Settlement, it is my opinion that the proposed Settlement is fair, reasonable, and adequate, and is in the best interests of the Settlement Class.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of September, 2023 in San Francisco, California.

*/s/ Tina Wolfson*
Tina Wolfson