Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

*Co-Lead Counsel for Plaintiffs and the
Settlement Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Ring LLC Privacy Litigation*<br><br>This Document Relates To:<br>All Actions. | Master File No.: 2:19-cv-10899 MWF (RAOx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:   April 1, 2024<br>TIME:    10:00 a.m.<br>JUDGE:  Hon. Michael W. Fitzgerald<br>CTRM:  5A |

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 1, 2024, at 10:00 a.m., in Courtroom 5A of the above-captioned Court before the Honorable Michael W. Fitzgerald, Plaintiffs Marco Mariutto, Yolanda Martinez, Jeannette Pantoja, Johnny Powell, and Abhi Sheth (collectively, "Plaintiffs"), will and hereby do move for an Order Granting Final Approval of Class Action Settlement, pursuant to the Class Action Settlement Agreement filed on September 22, 2023 (Dkt. 268).

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Tina Wolfson, Daniel S. Robinson, and Hassan A. Zavareei, the previously filed Class Action Settlement Agreement, all papers filed in support thereof, and such evidence and argument as the Court may consider.

Dated: March 4, 2024

Respectfully submitted,

/s/ Tina Wolfson
Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax: (949) 720-1292

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  BACKGROUND .........................................................................................2

   A.  The Litigation and Plaintiffs' Efforts on Behalf of the Settlement Class ............2

   B.  Plaintiffs' Settlement Efforts ..............................................................5

   C.  Preliminary Settlement Approval and Notice to the Settlement Class ................6

III. THE SETTLEMENT ....................................................................................7

   A.  The Settlement Class ............................................................................7

   B.  Equitable Relief for the Settlement Class ...............................................7

   C.  The Releases ....................................................................................10

   D.  Proposed Attorneys' Fees and Expenses and Representative Plaintiffs'
       Service Awards .................................................................................11

IV.  ARGUMENT..............................................................................................11

   A.  The Class Action Settlement Approval Process ...................................11

   B.  Final Approval of the Settlement is Appropriate................................12

       1.  The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and
           Likely Duration of Further Litigation Weigh in Favor of Settlement ...........13

       2.  Plaintiffs Face the Challenge of Maintaining Class Action Status Leading up
           to and Through Trial.......................................................................14

       3.  The Relief Offered in the Settlement Weighs in Favor of Approval............15

       4.  The Parties Engaged in Significant Pre-Trial Motion Practice, Conducted
           Extensive Discovery, Research, and Analysis to Adequately Assess the
           Strengths and Weaknesses of the Claims ...........................................16

       5.  The Recommendations of Experienced Counsel Favor Final Approval .......18

       6.  The Settlement is the Product of Informed Arm's-Length Negotiations ......19

   C.  Class Action Treatment is Appropriate for this Settlement.................21

       1.  The Criteria for Class Certification Under Rule 23(a) Are Satisfied ............21

           a.  Numerosity ...............................................................................21

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

b.   Common Issues of Law and Fact Exist, and Plaintiffs' Claims Are Typical of Class Claims ..........................................................................22

c.   Plaintiffs and Their Counsel Adequately Represent Class Members .....22

2.   Class Certification is Appropriate Under Rule 23(b)(2) ..............................23

D.   Notice Was Provided in Accordance With The Court's Order ..........................24

V.   CONCLUSION.........................................................................................................25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Adkins v. Facebook, Inc.*,
  No. 18-cv-5982, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ...................15

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017)......................................................................21

*Campbell v. Facebook Inc.*,
  No. 13-cv-5996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ...........15, 19

*Collins v. Cargill Meat Sols. Corp.*,
  274 F.R.D. 294 (E.D. Cal. 2011) .................................................................21

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .......................................................................................14

*Coopers v. Lybrand & Livesay*,
  437 U.S. 463 (1978) .....................................................................................14

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D. Cal. 2019) .........................................................19

*In re Bluetooth Headsets Litig.*,
  654 F.3d 935 (9th Cir. 2011).........................................................................19

*In re Colgate Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices
  Litig.*, No. 12-md-2320, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ..........16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).........................................................................17

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010).........................................................................11

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016)............................11

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008).......................................................................12

- iii -

*Jermyn v. Best Buy Stores, L.P.*,
   No. 08-cv-214, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ....................................25

*Kim v. Space Pencil, Inc.*,
   No. 11-cv-3796, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) .................................16

*Lilly v. Jamba Juice Co.*,
   No. 13-cv-2998, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)...........................24, 25

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
   No. 17-cv-2911, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019)...............................19, 20

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................................18

*Officers for Justice v. Civil Service Com'n of City and County of S.F.*,
   688 F.2d 615 (9th Cir. 1982)....................................................................................13

*Pederson v. Airport Terminal Servs.*,
   No. 15-cv-2400, 2018 WL 2138457 (C.D. Cal. April 5, 2018)..................................20

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009)...................................................................13, 15, 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)....................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .............................................................25

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998)..................................................................................24

*Wannemacher v. Carrington Mortg.*,
   No. 12-cv-2016, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ...............................20

**Statutes**

28 U.S.C. § 1715 ........................................................................................................25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

**Rules**

Fed. R. Civ. P 23.........................................................................................11

Fed. R. Civ. P 23(a) ....................................................................................21

Fed. R. Civ. P 23(a)(1) ...............................................................................22

Fed. R. Civ. P 23(a)(2) ...............................................................................22

Fed. R. Civ. P 23(a)(4) ...............................................................................22

Fed. R. Civ. P 23(b)(1) ..........................................................................24, 25

Fed. R. Civ. P 23(b)(2) .......................................................................7, 21, 23

Fed. R. Civ. P. 23(b)(3) ........................................................................19, 24

Fed. R. Civ. P. 23(c)(2) ..............................................................................24

Fed. R. Civ. P. 23(e)(2) ..............................................................................13

Fed. R. Civ. P. 23(h) ..................................................................................11

**Other Authorities**

4 Newberg on Class Actions, § 11:22 ....................................................12, 13

Manual for Complex Litigation (Fourth) §§ 21.63 *et seq*. (Fed. Jud. Center 2004) .......12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs respectfully seek final approval of the proposed class action Settlement with Defendant Ring LLC ("Ring").[1] The terms of the proposed Settlement are fair, reasonable, and adequate, as the Court had found when it preliminarily approved the Settlement. No Class Member has expressed any concern over the Settlement, and the Court should grant final approval.

The Settlement provides meaningful relief to all Class Members designed to address Ring's alleged data sharing practices. If approved, the Settlement will impose long-lasting, enforceable mandates on Ring to provide all existing and future Ring subscribers with adequate disclosures of Ring's third-party data sharing practices, as well as the opportunity to opt out of such sharing while still utilizing Ring's products and services. Importantly, the proposed Settlement is poised to deliver meaningful injunctive relief without further delay or expense and does not impact any Class Member's ability to pursue monetary damages against Ring through separate litigation.

The Settlement was achieved after nearly two years of hard-fought litigation and then two additional years of contentious, well-informed, arm's-length negotiations and mediation facilitated by the Honorable Jay C. Gandhi (Ret.), with extensive further negotiations between experienced counsel. Prior to settlement, the Court had granted Ring's motion to compel arbitration for all but the Non-Purchaser Plaintiffs, and even the Non-Purchaser Plaintiffs faced the risk of Ring's pending appeal of the Court's order denying arbitration of their claims. Plaintiffs faced these adverse rulings and additional risks of litigation, such as class certification and summary judgment proceedings, as they negotiated settlement.

The Court preliminarily approved the proposed Settlement on December 20, 2023. Dkt. 271. By this Motion, Plaintiffs respectfully request that the Court conduct a final

---

[1] Unless otherwise defined, capitalized terms herein have the meaning set forth in the Class Action Settlement Agreement ("SA" or "Settlement"). Dkt. 268.

review of the Settlement, and approve the Settlement as fair, reasonable, and adequate.

## II.   BACKGROUND

Plaintiffs zealously litigated this case through Interim Co-lead Counsel for the class, Tina Wolfson of Ahdoot & Wolfson, PC, Hassan A. Zavareei of Tycko & Zavareei LLP, and Daniel S. Robinson of Robinson Calcagnie, Inc. (together, "Plaintiffs' Counsel" or "Co-Lead Counsel"), whom the Court had appointed after a leadership application contest. Co-Lead Counsel (i) conducted a wide-ranging factual and legal investigation into the Settlement Class's claims; (ii) filed two comprehensive consolidated complaints in this action (not including the earlier complaints filed in each plaintiff's initial actions preceding consolidation); (iii) successfully opposed Ring's motion to compel arbitration as to certain Plaintiffs; (iv) engaged in significant discovery; (v) consulted with experts; (vi) prepared for class certification briefing; (vii) initiated multiple separate arbitration proceedings; and (viii) engaged in mediation with Ring overseen by the Honorable Jay C. Gandhi (Ret.), including the exchange of significant information in connection with such mediation, and many other tasks. As a result, Plaintiffs and Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

### A.   The Litigation and Plaintiffs' Efforts on Behalf of the Settlement Class

Between December 2019 and February 2020, four class action complaints were filed against Ring alleging various state and federal claims for misrepresentations and violations of Ring customers' security and privacy. In addition to claims arising from alleged hacking incidents involving unauthorized access to users' home Ring camera systems, Plaintiffs alleged that Ring surreptitiously collected and shared the sensitive Personal Information of its customers—including device and location tracking data— with numerous third parties such as Facebook without sufficient notice or consent.

On February 11, 2020, this Court issued an order consolidating the actions and, on November 13, 2020, appointed Interim Co-Lead Counsel after reviewing competing applications. Dkts. 19, 64. On December 17, 2020, after thoroughly vetting all potential

named plaintiffs represented by all counsel who had filed the original actions, Co-Lead Counsel filed a consolidated amended class action complaint ("CAC"), which included 41 named Plaintiffs from across the United States. Dkt. 69. On February 5, 2021, Ring filed a motion to compel Plaintiffs to arbitrate their claims on an individual basis and to stay the litigation, which Plaintiffs opposed.[2] Dkts. 82, 89.

Plaintiffs successfully opposed Ring's motion to stay discovery pending Ring's motion to compel arbitration. Dkts. 75, 80. The Parties exchanged initial disclosures and later extensively negotiated a protective order and ESI protocol. Dkts. 108-10.

On June 24, 2021, the Court granted in part Ring's motion to compel arbitration because it determined the arbitration agreement delegated the issue of arbitrability to an arbitrator for all Plaintiffs except the "Non-Purchaser Plaintiffs":

> The Purchaser Plaintiffs who made a Ring account using the Ring App or Website were on inquiry notice of Ring's Terms of Service. Therefore, the arbitration clause with respect to these Plaintiffs is enforceable. Because the Terms contained a delegation provision, the Court does not address Plaintiffs' arguments that the arbitration clause is unconscionable or otherwise unenforceable. However, the Non-Purchaser Plaintiffs are not bound by the agreement. They are not "Authorized Users" under the Terms of Service and their guardians' assent to the Terms' arbitration clause does not bind them.

Dkt. 113 ("Arb. Order"). Plaintiffs also opposed another stay motion by Ring pending its appeal of the arbitration order. Dkts. 125, 139.

On August 23, 2021, Plaintiffs filed the operative Second Amended Class Action Complaint ("SAC"), which acknowledged the stay of all Purchaser Plaintiffs' claims, while reasserting allegations of the Non-Purchaser Plaintiffs, comprised of minor children and an elderly woman in her daughter's care, and advanced claims for negligence, violation of the UCL, breach of implied contract, unjust enrichment, invasion of privacy under the California Constitution and common law, violation of the CLRA, and breach of

---

[2] For the purposes of the Motion, the parties distinguished between those Plaintiffs who purchased the Ring devices themselves (the "Purchaser Plaintiffs"), and those who were allegedly harmed by Ring devices but did not personally purchase them (the "Non-Purchaser Plaintiffs"). Dkts. 83, 89.

the implied warranty of merchantability. Dkt. 132.

The Purchaser Plaintiffs each filed separate arbitration demands to preserve and advance their claims. *See* concurrently filed Declaration of Tina Wolfson in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, Expenses, and Service Awards ("Wolfson Decl.") ¶ 14.

Plaintiffs allege that Ring promised users that it takes cybersecurity and privacy seriously and will safeguard users' private information. SAC ¶¶ 2, 379-80. Plaintiffs further allege that, to the contrary, Ring actively shared users' sensitive PII and other private information with third-party web and app analytics providers without first obtaining the customers' informed consent. *Id.* ¶¶ 327-46.

Plaintiffs opposed Ring's motion to dismiss the SAC, which was set for hearing prior to the Court's continuances pending the Parties' settlement discussions. Dkts. 149, 154-55, 160, 165-66.

On May 20, 2021, Plaintiffs served their first set of requests for production of documents. After Ring served its initial objections and responses, the Parties engaged in extensive conferral regarding Plaintiffs' requests for production that resulted in Ring supplementing its initial responses on July 6, 2021.

The Parties ultimately reached an impasse and brought a dispute to this Court regarding several requests for production propounded by Plaintiffs. *Id.* On December 15, 2021, Magistrate Judge Rozella A. Oliver held an informal discovery hearing regarding the dispute and ordered the Parties to submit additional letter briefing. Dkt. 147. This briefing was continued and then stayed pending the Parties' settlement in principle. Dkts. 154, 160, 166, 185.

The Parties conferred extensively regarding Plaintiffs' proposed Rule 30(b)(6) deposition topics. Plaintiffs also sought third-party discovery related to Ring's security vulnerabilities. Wolfson Decl. ¶ 18. Both areas of discovery were heavily contested between the Parties and likely to result in discovery motion practice had the Settlement not been achieved. *Id.*

Plaintiffs spent considerable time and resources consulting with prospective experts on both the alleged hacking and data sharing aspects of the litigation, as well as potential damages models. *Id.* ¶ 19. The Parties also exchanged numerous additional documents and information in connection with mediation and settlement discussions. *Id.* Plaintiffs had sufficient information to evaluate the claims and negotiate a fair settlement. *Id.* ¶ 20.

### B.    **Plaintiffs' Settlement Efforts**

After being compelled to arbitration, each of the Purchaser Plaintiffs submitted an arbitration demand against Ring. *Id.* ¶ 21. Those arbitration proceedings were all brought and managed by Co-Lead Counsel. *Id.* Cognizant of the distinct claims of the alleged hacking victims versus those consumers who did not experience alleged hacking ("PII Plaintiffs"), and on the advice of ethics counsel hired by Co-Lead Counsel, Co-Lead Counsel separated the negotiations. *Id.* Ms. Wolfson and her firm negotiated with Ring to address Ring's allegedly unlawful information sharing practices on behalf of the entire class, while Mr. Zavareei and Mr. Robinson negotiated individual settlements for the alleged hacking victims. *Id.* ¶ 22.

In her independent role, Ms. Wolfson began exploring resolution of the PII privacy claims at arm's length, while continuing individual arbitration efforts on behalf of the PII Plaintiffs. *Id.* ¶ 23. On behalf of the PII Plaintiffs, Ms. Wolfson and her team submitted a mediation brief, attended three separate formal mediation sessions (on October 25, 2021, June 2, 2022, and January 13, 2023) with Judge Gandhi, and engaged in numerous follow-up mediation efforts both directly with Ring's counsel and through Judge Gandhi. Wolfson Decl. ¶ 23. The Parties reached a settlement in principle in November 2022, over a year after their initial mediation. *Id.* ¶ 24. To say their negotiations were hard fought would be an understatement, as the Parties went back and forth repeatedly on (1) the nature of the Personal Information from Plaintiffs and Class Members that Ring had and was still sharing with third parties, as well as the methods of collection, (2) the method and content of disclosures to better put Plaintiffs, Class Members, and future Ring

customers on notice of those sharing practices, and (3) whether and how to implement a means to opt out of those practices while still utilizing Ring's products and services. *Id.* ¶ 25.

Even after reaching an agreement in principle for class resolution, the Parties' settlement negotiations remained hard fought and extensive. *Id.* ¶ 26. Plaintiffs' negotiations with Ring of a long-form settlement agreement took many more months, with multiple disagreements that again required Judge Gandhi's involvement and guidance. *Id.* Ms. Wolfson and her firm consulted extensively with experts throughout these negotiations to explore and confirm the most effective means to curtail the alleged data sharing practices and inform consumers through disclosures and policy changes. *Id.* ¶ 27. Ultimately, the Parties achieved the instant Settlement when it was fully executed on August 9, 2023, almost two years after their initial mediation session. *Id.* ¶ 28.

### C. <u>Preliminary Settlement Approval and Notice to the Settlement Class</u>

On September 22, 2023, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement ("Mot. Prelim. App."), which included supporting documents, declarations, and exhibits. Dkt. 269. As discussed therein, considering the arbitration ruling and the risk and uncertainty of class certification and continued litigation, the Settlement is an outstanding result for the Settlement Class.

On December 20, 2023, the Court preliminarily approved the Settlement, finding the proposed Settlement "procedurally and substantively fair at [the] preliminary approval stage." *See* Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement ("Prelim. App. Order"), Dkt. 271 at 1. In its Order, the Court directed Plaintiffs' counsel to "post information about the settlement on their website prior to the final settlement approval hearing." *Id*. In accordance with the Court's Order, information about the Settlement has been made available on Plaintiffs' Counsel's website. Wolfson Decl. ¶ 35.[3]

---

[3] *See* https://www.ahdootwolfson.com/blog/settlement-of-ring-app-data-sharing-class-action-gets-preliminary-approval/; https://www.tzlegal.com/current-class-settlements/.

On January 4, 2024, the Parties filed a Joint Stipulation regarding a proposed final approval hearing date and related deadlines, which the Court granted. Dkts. 272-73. The Court scheduled the final approval hearing for April 1, 2024. *Id.* The deadline to submit any objections to the Settlement is March 11, 2024. *Id.*

### III.      THE SETTLEMENT

The Settlement provides significant relief to Class Members in exchange for the Releases and is summarized below.

### A.      The Settlement Class

The Court preliminarily approved, for settlement purposes only, an injunctive relief only class pursuant to Fed. R. Civ. P 23(b)(2) defined as follows:

> [A]ll persons who purchased a Ring security device of any kind from Ring LLC and/or created a Ring account during the Class Period. Excluded from the Settlement Class are Defendant and Defendant's officers, agents, and employees. Also excluded from the Settlement Class are Plaintiffs' Counsel, any judicial officer presiding over the Action and members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered (the "Settlement Class").

Prelim. App. Order at 2; SA ¶ 23.

### B.      Equitable Relief for the Settlement Class

The negotiated equitable relief under the Settlement is thorough. This relief is designed to provide Class Members—as well as any other members of the public who use Ring's products and services in the future—the opportunity to meaningfully evaluate the option to opt out of Ring sharing their Personal Information and to make informed choices as to those practices.

As alleged in Plaintiffs' SAC, an independent investigation found that Ring's mobile app integrated numerous third-party data trackers, including one operated by Facebook. SAC ¶ 328. The data that was allegedly shared included Ring customers' names, IP addresses, and—importantly—persistent identifiers and device tracking data that companies utilize to create and maintain advertising profiles on consumers. *Id.* ¶¶ 329-35, 338. Plaintiffs further alleged that, while Ring could remove these personal

identifiers from the data it shared with third parties, it did not, nor did it provide adequate notification or obtain adequate consent for such practices from the customers whose data it was sharing. *Id.* ¶¶ 336-37.

The terms of the Settlement directly address these allegations by requiring Ring to update its user interface to prominently notify all existing and future Ring customers of its third-party data sharing practices, while simultaneously providing them with an easy method to opt out of these practices. Importantly, consumers maintain the ability to use Ring's products and services after opting out. Ring's data sharing notifications not only appear in its terms of service, but also as conspicuous notices in both new and existing users' account Control Center, alongside a conspicuous opt-out option. *See* SA Exs. C-D. Prior to this Settlement, Plaintiffs alleged that Ring did not provide any such clear or conspicuous disclosures or opt-out rights to its users, and Ring even *removed* information and links to opt out of third-party data sharing on its website privacy policy, with nebulous official statements as to when opting out was "applicable." SAC ¶¶ 372-75.

The specific Settlement terms are as follows:

As of the Stipulation Effective Date, and in part as a result of this litigation, Ring confirms that the Control Center and Cookie Preferences Manager offer its customers the option to opt out of sharing their Personal Information for the purposes of third-party web and app analytics as well as personalized advertising by third parties. *See* SA § III.B.

Ring shall continue to offer its United States customers the option to opt out of sharing their Personal Information with the third-party service providers identified in paragraphs 326 through 335 of the SAC, for purposes of third-party web and app analytics as well as personalized advertising by third parties, for a period of (3) three years from the Effective Date. SA § III.B.

Ring shall display the following, additional language in its United States Terms of Service within 30 days of the Effective Date for a period of three (3) years from the date it is posted, provided however that Ring may update this disclosure to ensure accuracy:

- We use third-party web and app analytics services on our websites and mobile apps. The service providers use automated technologies to collect and analyze information, including personal information (such as email, device identifier, and IP addresses) to understand how you use our websites and mobile apps. Web and app analytics services help us improve features, evaluate the effectiveness of our marketing, and, ultimately, optimize the customer experience. To learn more about these analytics services, please see our Cookie Policy.

- If you have a Ring account, you can opt out of Ring sharing your personal information with third parties for third-party web and app analytics and personalized advertising by third parties. Please visit the Control Center and/or Cookie Preferences Manager to set your preferences.

*See* SA § III.B.

Ring shall display the following, additional frequently asked question on Ring's United States website Privacy page within thirty (30) days of the Effective Date. Ring shall display this additional language for a period of three (3) years from the date it is posted, provided however that Ring may update this disclosure to ensure accuracy:

- **Does Ring use third-party web and app analytics services on its website and mobile apps?** We use third-party web and app analytics services on our websites and mobile apps. The service providers use automated technologies to collect and analyze information, including personal information (such as email, device identifier, and IP addresses) to understand how you use our websites and mobile apps. Web and app analytics services help us improve features, evaluate the effectiveness of our marketing, and, ultimately, optimize the customer experience. To learn more about these analytics services, please see our Cookie Policy.

- If you have a Ring account, you can opt out of Ring sharing your personal information with third parties for third-party web and app analytics and personalized advertising by third parties. Please visit the Control Center and/or Cookie Preferences Manager to set your preferences.

*See* SA § III.B.

Within thirty (30) days of the Effective Date, Ring shall update its United States Control Center language under "Third Party Service Providers" to contain the following language or language that is similar: "You can opt out of Ring sharing your personal information with third parties for third-party web and app analytics and personalized

- 9 -

advertising by third parties." Ring shall display this language for a period of three (3) years from the date it is posted, provided however that Ring may update this disclosure to ensure accuracy.

Within thirty (30) days of the Effective Date, Ring shall send a notice to all existing accountholders in the United States that informs them of Ring's Privacy Notice and the opt out option and provides a conspicuous hyperlink to the opt out option. *See* SA § III.B and Ex. C. Ring will send the notice by e-mail.

For a period of three (3) years after the Effective Date, Ring shall send an email to all persons who create a new account in the United States, after account registration is completed, that informs them of Ring's Privacy Notice and the opt out option and provides a conspicuous hyperlink to the opt out option ("New Account Email"). Ring shall begin sending New Account Emails within thirty (30) days of the Effective Date by e-mail. *See* SA§ III.B and Ex. D. Ring may update the New Account Email as appropriate, including to ensure accuracy, and update the notification method (e.g., by text, in-app notification, or other equivalent notice to the accountholder). SA § III.B.

### C. **The Releases**

The Settlement releases only claims for non-monetary relief, such as injunctive relief or other similar equitable relief on behalf of the Settlement Class. *See* SA ¶ 20 ("Released Settlement Class Claims"); and § III.K (Settlement Class Members' Releases). It does not release any claims on behalf of the Settlement Class for monetary damages. *Id.* ¶ 20 ("For avoidance of doubt, if a claim or cause of action seeks both monetary and equitable relief, only the equitable relief portion of the claim is being released by this Settlement."). The named Plaintiffs, on the other hand, are releasing their claims for injunctive relief and monetary damages. *Id.* ¶ 19 ("Released Individual Claims" include "any and all claims, demands, rights, actions, suits, damages, costs, fees, accounts, debts, liens, injunctive relief, restitution, and causes of action of whatever kind, nature, or description whatsoever, in law or in equity.").

1
2

**D.**     <u>Proposed Attorneys' Fees and Expenses and Representative Plaintiffs'
Service Awards</u>

3
4
5
6
7
8

    As set forth in Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service
Awards ("Fee Motion"), filed concurrently, Plaintiffs' Counsel seek attorneys' fees and
expenses in the total amount of $475,000, which, after deducting expenses, represents a
negative multiplier of approximately 0.36 on Plaintiffs' Counsel's total lodestar
pertaining to the PII claims in this litigation through February 29, 2024. The Fee Motion
also requests Service Awards of $5,000 for each of the five named Plaintiffs.

9
10
11
12
13

    As part of the Settlement, Plaintiffs and their counsel agreed that any requested
attorneys' fees, costs, expenses, and service awards, combined, will not exceed $500,000,
and Ring agrees not to oppose such a request. SA § III.I. Ring has agreed to pay any
amount awarded by the Court up to a maximum of $500,000 total for attorneys' fees and
expenses and Plaintiffs' service awards, combined.

14
15
16
17
18
19
20
21

    The Parties negotiated attorneys' fees and expenses and representative plaintiff
service awards only after agreement was reached on all material terms of the Settlement.
SA § III.I.; Wolfson Decl. ¶ 30; *see also In re Nat'l Football League Players Concussion
Injury Litig.*, 821 F.3d 410, 445 (3d Cir. 2016), *as amended* (May 2, 2016) (deferring
discussion of fees until after material settlement terms are agreed upon is a practice
routinely approved by courts). Class Members will have the opportunity to comment on
or object to the fee petition under Rule 23(h), consistent with Ninth Circuit authority. *See
In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

22

**IV.**   <u>ARGUMENT</u>

23

**A.**     <u>The Class Action Settlement Approval Process</u>

24
25

    Proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-
step procedure for approval of class action settlements:

26
27

(1)     Certification of a settlement class and preliminary approval of
the proposed settlement after submission to the Court of a written
motion for preliminary approval.

28

(2)   Dissemination of notice of the proposed settlement to the affected class members.

(3)   A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

Manual for Complex Litigation (Fourth) §§ 21.63 *et seq.* (Fed. Jud. Center 2004). This procedure safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. 4 Newberg on Class Actions, § 11:22 *et seq.* (4th ed. 2002) (hereinafter "Newberg").

The Court completed the first step in the settlement approval process when it issued the Preliminary Approval Order on December 20, 2023 (Prelim. App. Order, Dkt. 271), and the second step—Notice to Class Members—has been provided by Plaintiffs' Counsel, in accordance with the Court's instructions. Wolfson Decl. ¶ 30. By this Motion, Plaintiffs respectfully request that the Court take the third and final step and grant final approval of the Settlement.

### B.   <u>Final Approval of the Settlement is Appropriate</u>

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In weighing final approval of a class settlement, the Court's role is to determine whether the settlement, taken as a whole, is fair, reasonable, and adequate. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

The Ninth Circuit has established a list of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026.

- 12 -

This Court previously determined that the Settlement satisfies each of the requirements of Rule 23(e)(2). *See* Prelim. App. Order at 7-10. There is no reason to depart from the Court's preliminary conclusion that the proposed Settlement is fair, adequate, and reasonable.

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Weigh in Favor of Settlement

When evaluating the strength of a plaintiff's case, a court should assess the plaintiff's likelihood of success on the merits and the range of possible recovery. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009). The Court is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Service Com'n of City and County of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

The Settlement here appropriately balances the costs, risks, and likely delay of further litigation, on the one hand, against the benefits provided, on the other hand. 4 Newberg § 11:50 at 155 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

The Settlement Class faced the very real possibility that Ring's arbitration agreement and class action waiver would be found valid and enforceable, at the very least as to all Purchaser Plaintiffs and Class Members. Had the case continued, Ring's arbitration agreement and class action waiver likely would have prevented Class Members from proceeding in court, let alone as a class action, effectively eliminating the possibility of any comparable result. This class action likely ceased to exist for most Class Members when the Court compelled the Purchaser Plaintiffs to individual arbitration. Additionally, Ring appealed the portion of this Court's order that denied its motion compelling arbitration of the Non-Purchaser Plaintiffs' claims, which, if successful, could

- 13 -

have resulted in risky and expensive individual arbitrations as the only recourse for all Plaintiffs' and Class Members' claims against Ring.

The Settlement is an excellent result given this arbitration posture, as it requires Ring to address the practices that Plaintiffs alleged were unlawful to the benefit of all Class Members. At the same time, because there is no release of claims for monetary relief, Class Members are in the same posture as they were before as to those claims.

Even absent the likelihood of compelled individual arbitration, Plaintiffs' hurdles in this case would still be considerable. To achieve class certification, extensive and expensive expert analysis would be required, and Plaintiffs ultimately would have to prove that damages can be quantified using accepted principles of economics that are uniform to the entire Class. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013).

Although Plaintiffs firmly believe their liability case is strong and that class certification is warranted, it is uncertain whether the Court ultimately would grant certification and deny a motion for summary judgment filed by Ring. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing for Class Members because the amount of damages is uncertain.

Given the heavy obstacles and significant risks of continued litigation in this case—risks that might defeat any recovery at all—the immediate and tangible benefits the Settlement provides by way of substantive change in corporate behavior favor its approval.

### 2. Plaintiffs Face the Challenge of Maintaining Class Action Status Leading up to and Through Trial

As pointed out above, certification would have been hotly disputed and the outcome uncertain. A district court's order granting class certification under Rule 23 is "inherently tentative" and is "subject to revision," so Ring would have been able to move for de-certification at any time before trial. *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978).

A denial or reversal of class certification would effectively extinguish any hope of recovery by the Settlement Class. Even if Plaintiffs were to win class certification, there would remain a risk of losing on summary judgment or at a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Settlement Class, possibly for years. By contrast, the Settlement addresses Plaintiffs' allegations and provides for meaningful and immediate changes to Ring's practices.

### 3.    The Relief Offered in the Settlement Weighs in Favor of Approval

There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). Factors considered include "the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotation marks and citation omitted).

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief. *See, e.g.*, *Adkins v. Facebook, Inc.*, No. 18-cv-5982, 2021 WL 1817047, at *2-3 (N.D. Cal. May 6, 2021) (granting final approval of data breach settlement providing only injunctive relief); *Campbell v. Facebook Inc.*, No. 13-cv-5996, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020).

Other courts have granted final approval of settlements in which defendants have agreed to change business practices to comply with the law without monetary relief to the

class. *See, e.g.*, *In re Colgate Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320, 2015 WL 7282543, at *2, *10-13 (D.N.H. Nov. 16, 2015) (granting final approval of settlement that required the defendant to cease using allegedly misleading marketing statements, without releasing class members' monetary claims, because "[t]he proposed settlement provides a benefit equal to, or greater than, what class members would likely achieve through continued litigation"); *Kim v. Space Pencil, Inc.*, No. 11-cv-3796, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012) (court approved a settlement which "stop[ped] the allegedly unlawful practices, bar[red] Defendant from similar practices in the future, and d[id] not prevent the class members from seeking legal recourse.").

In contrast to zero, which is what Class Members might well receive had the case continued, the Settlement provides meaningful equitable relief designed to address Ring's alleged data sharing practices. Though the Settlement does not include monetary relief, it does not prevent Class Members from seeking monetary relief for the alleged conduct as the Settlement Class will only be releasing claims for non-monetary relief. *See* SA ¶ 20 ("Released Settlement Class Claims"); and § III.K (Settlement Class Members' Releases). The Settlement does not release any claims on behalf of the Settlement Class for monetary damages. *Id.* ¶ 20 ("For avoidance of doubt, if a claim or cause of action seeks both monetary and equitable relief, only the equitable relief portion of the claim is being released by this Settlement."). Settlement Class Members are free to pursue monetary remedies against Ring arising from the same conduct alleged here.

Only the named Plaintiffs will be releasing claims for monetary damages. *See* SA ¶ 19 (Released Individual Claims). The Released Settlement Class Claims (SA ¶ 20) are therefore limited in nature and tailored exactly to the type of relief obtained for the Settlement Class (i.e., equitable relief). This factor weighs in favor of final approval.

### 4. The Parties Engaged in Significant Pre-Trial Motion Practice, Conducted Extensive Discovery, Research, and Analysis to Adequately Assess the Strengths and Weaknesses of the Claims

This factor evaluates whether the parties have sufficient information to make an

- 16 -

informed decision with respect to settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (internal quotation omitted). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (internal quotation omitted).

This factor weighs heavily in favor of approving the instant Settlement. By the time the Parties reached the Settlement, they had engaged in significant pre-trial motion practice, conducted extensive discovery, and spent considerable time and resources consulting with experts. Wolfson Decl. ¶¶ 6, 10-27.

Plaintiffs' Counsel conducted extensive factual investigation in this matter, including, *inter alia*: significant pre-filing investigations, which included detailed review and evaluation of the facts, including a thorough and exhaustive investigation of issues related to Ring's alleged violations of its customers' security and privacy, and comprehensive research and analysis of the applicable law, including relating to Ring's arbitration agreement. Wolfson Decl. ¶¶ 6, 19-20. Plaintiffs' Counsel interviewed and conducted a detailed vetting of numerous potential named plaintiffs from across the United States. *Id.* ¶ 10. In all phases of the litigation, Plaintiffs' Counsel endeavored to gain an ample understanding of the legal issues underlying Plaintiffs' claims. *Id.* ¶ 19.

The breadth of information gleaned from their extensive discovery and investigation efforts allowed Class Counsel to weigh the likelihood of the success of Plaintiffs' claims and estimate individual damages associated with Plaintiffs' claims. *Id.* ¶¶ 19-20. This important work also allowed Class Counsel to formulate a litigation strategy aimed at obtaining meaningful relief for the Settlement Class as efficiently as possible. *Id.*

Plaintiffs spent considerable time and resources consulting with prospective experts on both the alleged hacking and data sharing aspects of the litigation, as well as

- 17 -

potential damages models. *Id.* The Parties also exchanged numerous additional documents and information in connection with mediation and settlement discussions. *Id.*

This work gave Plaintiffs' Counsel sufficient knowledge to understand the strength and weaknesses of Plaintiffs' claims and to negotiate a fair and equitable settlement. *Id.* Plaintiffs' Counsel fully endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Class. Wolfson Decl. ¶¶ 7, 56-58.

## 5.   The Recommendations of Experienced Counsel Favor Final Approval

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation . . . because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also Rodriguez*, 563 F.3d at 697 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's outcome in litigation.").

Plaintiffs are represented by attorneys who were previously appointed by the Court to represent the interests of the Settlement Class after careful consideration of their qualifications. *See* Dkts. 19, 64. Plaintiffs' Counsel have extensive experience and expertise in prosecuting complex class actions, including consumer protection and privacy class actions. Dkt. 64; Wolfson Decl. ¶¶ 51-55. Plaintiffs' Counsel were informed of the facts, claims, and defenses in this action, as well as the risks of proceeding to trial, and endorse the Settlement without reservation. Wolfson Decl. ¶¶ 7, 56-58; *see also* concurrently filed Declarations of Daniel S. Robinson ("Robinson Decl.") ¶¶ 2, 13-14, and Hassan A. Zavareei ("Zavareei Decl.") ¶¶ 2, 9-10; *Rodriguez,* 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]").

### 6.    The Settlement is the Product of Informed Arm's-Length Negotiations

Courts typically scrutinize the negotiated settlement "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quoting *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011)). Where, as here, the settlement is for injunctive relief purposes only and class members do not release any monetary claims, the heightened scrutiny of a collusion analysis is inapplicable. *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* No. 17-cv-2911, 2019 WL 343472, at *3 n.2 (N.D. Cal. Jan. 28, 2019); *see also Campbell*, 2017 WL 3581179, at *5 ("Arguably, [the] *Bluetooth* [collusion analysis] is not even applicable to this settlement because it does not involve a Rule 23(b)(3) damages class" because "there is no common fund, 'constructive' or otherwise: the certified class is injunctive-relief-only, and monetary damages claims are not at issue").

To the extent heightened scrutiny is applied to this Settlement, the Court can be confident of the arm's-length nature of the negotiation process. Here, such an evaluation demonstrates not only that the *Bluetooth* factors are inapplicable to the instant Settlement, but that Plaintiffs' Counsel have not "allowed pursuit of their own self-interests and that of class members to infect the negotiations." *Bluetooth*, 647 F.3d at 947 (evaluating factors of collusion, including whether counsel would receive a disproportionate distribution of the settlement, whether the settlement includes a "clear sailing" arrangement, and whether the settlement permits a reversion of class funds back to the defendant).

Although this Settlement includes a clear sailing provision, such provisions are "not prohibited" (*Bluetooth*, 647 F.3d at 949) and the clear sailing provision here readily withstands "great[] scrutiny" (*id.*) because (1) the Parties did not discuss or negotiate attorney fees, expenses, or representative plaintiff service awards until reaching an agreement in principle on Class resolution; (2) because this is solely an injunctive relief

- 19 -

settlement, there is no settlement fund from which unawarded money will revert to Ring, and the Settlement Class is not releasing monetary claims; (3) any Court-approved fee award will not reduce any Settlement Class benefits; (4) the proposed fee award represents a significant negative multiplier to Plaintiffs' Counsel's lodestar; and (5) the Settlement is not conditioned on the approval of Plaintiffs' attorney fee request. Wolfson Decl. ¶¶ 30, 38, 56.

This litigation was hard-fought, and the Settlement was reached only after extensive, arm's length negotiations that spanned nearly two years and followed extensive discovery, motion practice, and formal mediations. *See Wannemacher v. Carrington Mortg.*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant . . . discovery [was] conducted"; and before "exploring settlement, the parties litigated the case for a year"); *see also Moreno*, 2019 WL 343472, at *5 (that the parties engaged in substantial motion practice and thus have had an opportunity to evaluate the strength and weaknesses of the relative claims and defenses weighs in favor of settlement approval). The Settlement is the product of lengthy arm's-length negotiations over the course of two years between experienced counsel overseen by the Honorable Jay C. Gandhi (Ret.), an experienced neutral mediator. *See Bluetooth*, 654 F.3d at 948 (finding that engaging in formal mediation with an experienced mediator weighs "in favor of a finding of non-collusiveness"); *Pederson v. Airport Terminal Servs.*, No. 15-cv-2400, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected non-collusive negotiations).

In connection with the mediation, the Parties exchanged extensive briefing which educated both sides on the risks of continuing litigation. Wolfson Decl. ¶ 23. When negotiations began, Plaintiffs had a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *Id*. Despite not reaching agreement during three formal mediation sessions, the Parties continued their hard-fought negotiations for over a year after mediation until reaching a detailed settlement in principle for the instant

injunctive relief. *Id*. ¶ 24.

Even after reaching an agreement in principle for class resolution, the Parties' settlement negotiations remained hard fought and extensive. *Id*. ¶¶ 25-26. Plaintiffs' negotiation with Ring of a long-form settlement agreement took many more months, with multiple disagreements that again required Judge Gandhi's involvement and guidance at times. *Id*. The Parties engaged in intense back-and-forth negotiations regarding every detail of the Settlement, and they did not finalize their Settlement Agreement until August 2023—almost two years after their initial mediation session. *Id*. ¶¶ 25-28. There is no indication of collusion or fraud in the settlement negotiations, and none exists.

**C.   Class Action Treatment is Appropriate for this Settlement.**

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy[.]" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). In its Preliminary Approval Order, the Court found that the Settlement Class could be certified as defined in ¶ 23 of the Settlement Agreement. *See* Prelim. App. Order at 12. In doing so, the Court found that the representative Plaintiffs satisfied both Rule 23(a) and (b)(2) requirements, and that Plaintiffs' Counsel were adequate representatives of the Settlement Class. *Id*. at 13. As demonstrated below, there is no reason for the Court to depart from its previous conclusion that certification of the Settlement Class is warranted, and no party argues otherwise.

**1.   The Criteria for Class Certification Under Rule 23(a) Are Satisfied**

**a.   Numerosity**

Numerosity is satisfied where "joinder of all [class] members is impracticable." *Hanlon*, 150 F. 3d at 1019. Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Collins v. Cargill Meat Sols. Corp*., 274 F.R.D. 294, 300 (E.D. Cal. 2011). The Settlement Class here encompasses over one million Class Members. Wolfson Decl. ¶ 34; *see* Prelim. App. Order at 12 ("This

- 21 -

is more than enough to satisfy Rule 23(a)(1)'s numerosity requirement."). Joinder of more than a million persons who purchased a Ring security device of any kind from Ring and/or created a Ring account within the Class Period is impractical, if not impossible. Wolfson Decl. ¶ 34. Numerosity is satisfied.

### b.    Common Issues of Law and Fact Exist, and Plaintiffs' Claims Are Typical of Class Claims

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality "has been construed permissively [where] ... [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Typicality refers to the nature of the class representatives' claims, not to the specific facts from which they arose or the particular relief sought. Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 1020.

Plaintiffs' claims are typical of, and common to, the Settlement Class. Plaintiffs contend that the Settlement Class claims all arise from a common course of conduct by Ring towards each Class Member: Ring's allegedly improper sharing of its users' sensitive personal information with third parties without first obtaining users' authorization or consent. Because "Plaintiffs' claims are premised on exactly the same practice as those of the absent Settlement Class members . . . . the typicality requirement is satisfied." Prelim. App. Order at 12.

### c.    Plaintiffs and Their Counsel Adequately Represent Class Members

Rule 23(a)(4) permits class certification if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

- 22 -

Here, Plaintiffs' interests are aligned with the Settlement Class, as they do not have any conflicts of interest with the Settlement Class and their claims are coextensive with those of Class Members; the Settlement also does not afford them preferential treatment. Moreover, they have established their adequacy by securing experienced counsel to litigate their claims and secured the proposed Settlement, which, if approved, will convey a substantial benefit on the Settlement Class.

Plaintiffs have also been active participants in the litigation. Wolfson Decl. ¶ 29. They investigated the matter prior to and after retaining their respective attorneys, participated in the plaintiff vetting process implemented by Plaintiffs' Counsel, reviewed, and approved their original complaints, participated in preparing initial disclosures, understood that they may have to sit for a deposition, kept in contact with counsel to monitor the progress of the litigation, and reviewed and communicated with their counsel regarding the Settlement Agreement. *Id.*

Plaintiffs' Counsel are well qualified and experienced in complex class action litigation and have an established track record in litigating cases involving consumer protection and consumer privacy. Wolfson Decl. ¶¶ 51-56. Further, this Court already determined that Plaintiffs' Counsel are suitable Interim Class Counsel. *See* Dkts. 19, 64; *see also* Prelim. App. Order at 14 ("Plaintiffs' counsel has substantial experience litigating similar types of class actions, and there is no reason to believe that Plaintiffs and their counsel would not vigorously pursue this action on behalf of the Settlement Class.").

## 2.   Class Certification is Appropriate Under Rule 23(b)(2)

Under Rule 23(b)(2), a class action is properly certified where the party against whom relief is sought "has acted or refused to act on grounds that apply generally to the class, so that injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice[.]" *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.

- 23 -

1998). Further, "[a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id.*

Plaintiffs complain of the same alleged business practices—i.e., the unauthorized use and dissemination of their Personal Information—that are generally applicable to the Settlement Class. Moreover, Ring's alleged actions generally apply to the Settlement Class as a whole. Importantly, the prospective injunctive relief provides a direct benefit sought through this litigation based on Ring's alleged third-party data sharing practices. This relief not only benefits Plaintiffs and Class Members, but any other member of the public who seeks to utilize Ring's products and services in the future.

The alleged privacy violations at the heart of this case—Ring's alleged surreptitious collection and sharing of Personal Information with numerous third-party data app trackers without sufficient notice or consent—are remedied by the prospective relief proposed in this Settlement, such that all current and future Ring customers will be on adequate notice of Ring's third-party data sharing practices and be empowered to choose whether to allow their data to be subject to those practices while utilizing Ring's products and services. Ring has agreed to change its disclosures and to make its opt-out policy more conspicuous for all users, so that all existing and future customers now can make informed decisions about how Ring shares their data with other companies. Rule 23(b)(2) certification of the Settlement Class is appropriate.

## D.   Notice Was Provided in Accordance With The Court's Order

Unlike a Rule 23(b)(3) class, where notice is mandatory, Rule 23(c)(2) states that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2) (emphasis added). "Courts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members" and there is no option for class members to opt out. *Lilly v. Jamba Juice Co.*, No. 13-cv-2998, 2015 WL 1248027, *8-9 (N.D. Cal. Mar. 18, 2015) (holding that because the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members, class notice is not

- 24 -

necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

District courts have often determined that no notice is required for injunctive relief only settlements that do not release any monetary claims. *See, e.g., Lilly,* 2015 WL 1248027, at *9; *Jermyn v. Best Buy Stores, L.P.*, No. 08-cv-214, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release the class members' monetary claims, notice to the class members is not required").

Here, the Settlement provides for equitable relief only and preserves the rights of Settlement Class Members to bring claims for monetary relief against Ring. *See* SA § III.K. Further, even with notice, Settlement Class Members would not have the right to opt out. *See Lilly*, 2015 WL 1248027, at *9.

"Based on the circumstances of this action," the Court concluded that "no individual, direct notices to Settlement Class members is required." Prelim. App. Order at 15. Nevertheless, the Court concluded that "in addition to serving the required CAFA notices to state and federal officials, Plaintiffs' Counsel is required to post information about the settlement on their website prior to the final settlement approval hearing." *Id.*[4]

In accordance with the Court's Order, information about the Settlement has been made available on Plaintiffs' Counsel's website. Wolfson Decl. ¶ 35.[5]

## V.    <u>**CONCLUSION**</u>

For the reasons discussed herein, Plaintiffs respectfully request that final approval of the Class Action Settlement be granted.

---

[4] Notice has been issued pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no governmental entity has intervened. Wolfson Decl. ¶ 35.

[5] *See supra* note 3.

1 | Dated: March 4, 2024

Respectfully submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
(310) 474-9111; Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288; Fax: (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
(202) 973-0900; Fax (202) 973-0950
hzavareei@tzlegal.com

*Co-Lead Counsel for Plaintiffs and the Settlement Class*